1  BENJAMIN B. WAGNER
   United States Attorney
2  EDWARD A. OLSEN, CSBN 214150
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2821
   Facsimile: (916) 554-2900
5  Email: edward.olsen@usdoj.gov

6  Attorneys for Federal Defendants

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 JAMES GRINOLS, ROBERT ODDEN, in their       CASE NO. 2:12-CV-02997-MCE-DAD
   capacity as Presidential Electors; EDWARD C.
12 NOONAN, THOMAS GREGORY
   MACLERAN, KEITH JUDD, in their capacity      DEFENDANTS' OPPOSITION TO
13 as candidates for the U.S. President in 2012,    PLAINTIFFS' MOTION FOR A
                                                TEMPORARY RESTRAINING ORDER
14                           Plaintiffs,
                                                Date:   January 3, 2013
15 v.                                           Time:   2:00 p.m.
                                                Place:  Courtroom 7, 14th Floor
16 ELECTORAL COLLEGE, PRESIDENT OF             Judge:  Morrison C. England, Jr.
   THE SENATE, GOVERNOR OF
17 CALIFORNIA, SECRETARY OF STATE OF
   CALIFORNIA, U.S. CONGRESS, BARACK
18 HUSSEIN OBAMA, AKA BARACK
   (BARRY) SOETORO, AKA BARACK
19 OBAMA SOEBARKAH, in his capacity as a
   Candidate for the U.S. President in 2012,
20
                             Defendants.
21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................. ii

I. INTRODUCTION................................................................... 1

II. THE PARTIES AND PLAINTIFFS' INSUFFICIENT SERVICE OF PROCESS. ............. 2

III. LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER .................... 4

IV. BRIEF OVERVIEW OF THE ELECTORAL PROCESS.................................. 6

V. PLAINTIFFS HAVE FAILED TO ESTABLISH ANY LIKELIHOOD OF
SUCCESS ON THE MERITS............................................................ 8

    A.    Plaintiffs Lack Article III Standing ........................................... 8

        1.    Plaintiffs' Claim Is Only A Generalized Grievance........................ 9

        2.    Plaintiffs Cannot Demonstrate a Causal Connection
            Between Their Alleged Injury and the Federal Defendants................. 13

        3.    Plaintiffs' Alleged Injuries Are Not Redressable by this Suit. ............. 14

    B.    The Speech or Debate Clause Bars This Suit. ................................ 14

    C.    Plaintiffs' Petition Presents a Nonjusticiable Political Question................... 17

        1.    The Constitution Commits to the Congress Alone
            the Manner in Which It Counts the Electoral Votes
            for President and Vice President. ........................................... 17

        2.    The Court's Consideration of Plaintiffs' Claims Would
            Intrude Into the Congress' Internal Procedures and, Thus,
            Would Demonstrate a Lack of Respect for a Co-Equal Branch. ........... 19

    D.    Plaintiffs' Arguments Lack Merit. ......................................... 20

VI.    REMAINING FACTORS COUNSEL AGAINST INJUNCTIVE RELIEF................ 22

    A.    Plaintiffs Are Threatened With No Irreparable Harm In
        The Absence Of Entry Of Their Requested Injunction. ........................ 22

    B.    The Substantial Interests of Other Interested Parties and
        of the Public Will be Harmed if Plaintiffs are Granted
        the Preliminary Relief They Seek. ......................................... 23

VII. CONCLUSION.................................................................. 24

FEDERAL CASES

*Allen v. Wright,*
 468 U.S. 737 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Baker v. Carr,*
 369 U.S. 186 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Barry v. United States ex rel. Cunningham,*
 279 U.S. 597 (1929). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Berg v. Obama,*
 574 F. Supp. 2d 509 (E.D. Pa. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*Berg v. Obama,*
 586 F.3d 234 (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

*Bogan v. Scott-Harris,*
 523 U.S. 44 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Brown v. Hansen,*
 973 F.2d 1118 (3d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cohen v. Obama,*
 2008 WL 5191864 (D.D.C. Dec 11, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Committee in Solidarity v. Sessions,*
 929 F.2d 742 (D.C. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Consumers Union of United States v. Periodical Correspondents' Assoc.,*
 515 F.2d 1341 (D.C. Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Crawford v. Marion County Election Bd.,*
 553 U.S. 181 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Davis v. Passman,*
 442 U.S. 228 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Doe v. McMillan,*
 412 U.S. 306 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Drake v. Obama,*
 664 F.3d 774 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*Eastland v. United States Servicemen's Fund,*
 421 U.S. 491 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Flast v. Cohen,*
 392 U.S. 83 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Franklin v. Massachusetts,*
 505 U.S. 788 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*GTE Corp. v. Williams,*
    731 F.2d 676 (10th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Granny Goose Foods, Inc. v. Teamsters,*
    415 U.S. 423 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gravel v. United States,*
    408 U.S. 606 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Hastings v. United States Senate,*
    716 F. Supp. 38 (D.D.C. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hearst v. Black,*
    87 F.2d 68 (D.C. Cir. 1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Holister v. Soetoro,*
    601 F. Supp. 2d 179 (D.D.C. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hollander v. McCain,*
    566 F. Supp. 2d 63 (D.N.H. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Jones v. Bush,*
    122 F. Supp. 2d 713 (N.D. Tex.),
    aff'd without opinion, 244 F.3d 134 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Keener v. Congress of the United States,*
    467 F.2d 952 (5th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kentucky v. Graham,*
    473 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kerchner v. Obama,*
    669 F. Supp. 2d 477 (D. N.J.),
    aff'd, 612 F.3d 204 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*Kilbourn v. Thompson,*
    103 U.S. 168 (1881). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lance v. Coffman,*
    549 U.S. 437 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ex parte Levitt,*
    302 U.S. 633 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hollman v. United States Electoral College,*
    2009 WL 1114146 (W.D. Ark. Apr. 24, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 14

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Metzenbaum v. FERC,*
    675 F.2d 1282 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mississippi v. Johnson,*
    71 U.S. (4 Wall.) 475 (1866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nat'l Conference on Ministry to Armed Forces v. James,*
    278 F. Supp. 2d 37 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nat'l Council of Arab Americans v. City of New York,*
    331 F. Supp. 2d 258 (S.D.N.Y.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Newdow v. Bush,*
    355 F. Supp. 2d 265 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Nixon v. United States,*
    506 U.S. 224 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Oakland Tribune, Inc. v. Chronicle Pub. Co.,*
    762 F.2d 1374 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Pauling v. Eastland,*
    288 F.2d 126 (D.C. Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Powell v. McCormack,*
    395 U.S. 486 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Raines v. Byrd,*
    521 U.S. 811 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rhodes v. MacDonald,*
    670 F. Supp. 2d 1363 (M.D. Ga. 2009), aff'd, 368 Fed. Appx. 949
    (11th Cir. 2010), cert. denied, 131 S. Ct. 918 (U.S. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Robinson v. Bowen,*
    567 F. Supp. 2d 1144 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 19

*Schlesinger v. Reservists Committee to Stop the War,*
    418 U.S. 208 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Schultz v. Sundberg,*
    759 F.2d 714 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sibley v. Obama,*
    866 F. Supp. 2d 17 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21

*Simon v. Eastern Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.,*
    240 F.3d 832 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Supreme Court of Virginia v. Consumers Union,*
    446 U.S. 719 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Taitz v. Obama,*
    707 F. Supp. 2d 1 (D.D.C. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Taitz v. Ruemmler,*
    2011 WL 4916936 (D.D.C. Oct. 17, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Travelers Ins. Co. v. SCM Corp.,*
    600 F. Supp. 493 (D.D.C. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Trimble v. Johnston,*
    173 F. Supp. 651 (D.D.C. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Ark*,
    169 U.S. 649 (1898). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Richardson,*
    418 U.S. 166 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Valley Forge Christian College v. Americans United for Separation
of Church and State, Inc.,*
    454 U.S. 464 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Vander Jagt v. O'Neill,*
    699 F.2d 1166 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Warth v. Seldin,*
    422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Winter v. Natural Res. Def. Council,*
    555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATE CASES

*Keyes v. Bowen,*
    117 Cal. Rptr. 3d 207 (Cal. Ct. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## FEDERAL STATUTES

3 U.S.C. § 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3 U.S.C. § 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

3 U.S.C. §§ 7, 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

3 U.S.C. § 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

3 U.S.C. §§ 9, 10, 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3 U.S.C. § 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7, 14, 16, 19

Fed. R. Civ. P. 4(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 4(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 4(I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 4(i)(1), (2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 4(i)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 23(c)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Evid. 201(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const. Amend. XII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 16

U.S. Const. art. I, § 6, cl. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S. Const. Art. II, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## PUBLICATIONS

Jack Maskell & Elizabeth Rybicki,
*Counting Electoral Votes: An Overview of Procedures at the*
*Joint Session, Including Objections by Members of Congress,*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Ross & William Josephson,
*The Electoral College And The Popular Vote,*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

Plaintiffs – one of whom is currently serving a 210-month sentence for extortion at the Federal Correctional Institution in Texarkana, Texas – filed this action seeking a declaration that President Barack Obama is ineligible for the presidency under Article II, section 1 of the United States Constitution, which provides: "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President." Plaintiffs contend that, despite the fact that the President has produced a birth certificate from the State of Hawaii, he was actually born in Kenya and is a citizen of Indonesia, thus making him ineligible to be President. *See* Declaratory and Injunctive Relief Petition for Extraordinary Emergency Writ of Mandamus ("Petition") at 10.

Plaintiffs seek the following injunctive relief in their Petition: (1) a stay of the Governor of the State of California's preparation and delivery of Certificates of Ascertainment, which are lists of the names of the electors chosen by each state to serve in the Electoral College; (2) a stay of the meeting of the Electoral College, at which electors of each state cast their votes for President; (3) a stay of the delivery of the electors' sealed votes to the President of the Senate; (4) a stay of the President of the Senate's opening of the states' sealed electoral votes in the joint session of the Senate and the House of Representatives on January 4, 2013, his reading of the votes to the joint session of Senate and the House of Representatives, and his announcement at the joint session of which person has been elected President of the United States.[1] Petition at 28-30.

This action is simply the latest in a string of suits filed by Orly Taitz, Esquire, in her seemingly endless but frivolous attempt to prove that President Obama is not a natural born citizen as required by the Constitution. *See, e.g., Taitz v. Obama*, 707 F. Supp. 2d 1, 3 (D.D.C. 2010) ("This is one of several such suits filed by Ms. Taitz in her quixotic attempt to prove that President Obama is not a natural born

---

[1] The date for counting electoral votes at the joint session of the Senate and House of Representatives is fixed by law. Under 3 U.S.C. § 15, that date is January 6th, although because January 6, 2013 falls on a Sunday, a Joint Resolution was passed on December 18, 2012, moving the date of the joint session to January 4, 2013. *See* H.J. Res. 122, 112th Cong. (2012).

citizen as required by Constitution. *See* U.S. Const. Art. II, § 1. This Court is not willing to go tilting at windmills with her."), *Rhodes v. MacDonald*, 670 F. Supp. 2d. 1363 (M.D. Ga. 2009) (imposing a $20,000 sanction against Ms. Taitz in a case alleging that the President is not a natural born citizen and therefore ineligible for the President), *aff'd*, 368 Fed. Appx. 949 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 918 (U.S. 2011).

Plaintiffs filed a motion for a temporary restraining order on December 20, 2012. However, prior to the filing of the motion, the bulk of plaintiffs' request for injunctive relief had become moot. The Governor of California had already prepared and delivered his Certificates of Ascertainment, which he was required to do under 3 U.S.C. § 6 on or before December 17, 2012. The members of the Electoral College had already convened and cast their votes for President. *See* 3 U.S.C. §§ 7, 8 (stating that the electors of each state must meet at the place designated by that state on the first Monday after the second Wednesday in December (December 17, 2012) to cast their votes for President of the United States). Finally, the Electoral College electors had already delivered their sealed votes to the President of the Senate. *See* 3 U.S.C. §§ 9, 10, 11 (directing the electors to send their sealed votes to the President of the Senate one day after their meeting on December 17, 2012).

Plaintiffs' last-minute effort to enjoin the remaining portion of the Presidential election process provided for in the Twelfth Amendment – the counting of electoral votes at the joint session of the Senate and the House of Representatives on January 4, 2013, and the announcement of who has been elected President – should be rejected because plaintiffs lack standing to bring their claims under Article III of the Constitution; their claims are barred by the Speech or Debate Clause of the Constitution; and their claims are barred by the political question doctrine. Plaintiffs have also failed to show irreparable injury in the absence of the extraordinary relief they seek, and the entry of a temporary restraining order would throw the result of the 2012 Presidential election into doubt, disrupt the continuity of governance, and intrude into the internal matters entrusted by the Constitution to the United States Congress.

## II. THE PARTIES AND PLAINTIFFS' INSUFFICIENT SERVICE OF PROCESS

The Petition lists three candidates for President as plaintiffs – Edward Noonan (alleged to have won the American Independent Party's presidential primary in California), Thomas Gregory MacLeran

1  (alleged to have been a candidate for President), and Keith Judd  (alleged to have been a Democratic

2  Party candidate for President).  The Petition does not allege that any of these candidates were actually

3  on the ballot in any state in the General Election on November 6, 2012.  A review of the California

4  Secretary of State's Statement of Vote for the November 6, 2012 General Election, reveals that none of

5  these individuals received a single vote for President in California.  *See*

6  http://www.sos.ca.gov/elections/sov/2012-general/sov-complete.pdf.[2]  The Petition also does not allege

7  that any electors were pledged to any of these candidates.  In California, for example, on or before

8  October 1st of the presidential election year, each party's nominee must file a list containing the names,

9  addresses, and telephone numbers of the 55 electors pledges to him or her.  *See*

10  http://sos.ca.gov/elections/electoral-college.htm.

11       Although the Petition alleges that Edward Noonan was the winner of the American Independent

12  Party primary, an individual by the name of Thomas Hoefling was actually nominated as the American

13  Independent Party's candidate for President, not Mr. Noonan.  *See*

14  http://www.sos.ca.gov/elections/sov/2012-general/sov-complete.pdf  The Petition does not allege with

15  which party Thomas Gregory MacLeran was affiliated, nor does it provide any other details regarding

16  his candidacy for President.  Although the Petition alleges that Keith Judd received forty percent of the

17  vote in the West Virginia Democratic Party Primary, Judd is currently serving a prison sentence at the

18  Federal Correctional Institution in Texarkana, Texas, and is not scheduled for release until June 24,

19  2013.  *See* http://www.bop.gov/iloc2/LocateInmate.jsp.

20       The Petition also lists two electors as plaintiffs – James Grinols (alleged to have been a

21  Republican Party elector) and Robert Odden (alleged to have been a Libertarian Party elector).  The

22  Petition does not allege from which state either of these individuals was designated by their respective

23  parties to be electors.

24

25

---

26       [2]  The Court may take judicial notice of information on government websites.  *See* Fed. R. Evid.
    201(b)(2) (allowing a court to take judicial notice of facts capable of accurate and ready determination
27  by resort to sources whose accuracy cannot reasonably be questioned); *Crawford v. Marion County
    Election Bd.*, 553 U.S. 181, 199 n.18 (2008) (taking judicial notice of information on government
28  website).

The Petition lists Barack Obama in his capacity as "Candidate for the U.S. President in 2012," the Electoral College, the Congress, the Vice President of the United States in his capacity as President of the Senate, the Governor of California, and the California Secretary of State, as defendants.[3] However, none of the defendants has been properly served under Fed. R. Civ. P. 4(i). Plaintiffs have provided only the U.S. Attorney's Office with their Petition and Motion for a Temporary Restraining Order, not any of the named federal defendants. *See* Docket Nos. 10, 11; Fed. R. Civ. P. 4(i)(1), (2). Moreover, the Petition was simply mailed to the U.S. Attorney's Office by Federal Express, not by certified or registered mail as Fed. R. Civ. P. 4(i) requires, and it was not addressed to the civil process clerk. *See* Fed. R. Civ. P. 4(a)(1)(A). The motion for a temporary restraining order was also simply mailed to the U.S. Attorney's Office by Federal Express, not by certified or registered mail, *see id.*, and the U.S. Attorney's Office was not notified by plaintiffs of the existence of the Court's minute order setting a briefing schedule on the motion for a temporary restraining order by 4:00 pm on December 20, 2012, as directed in the Court's minute order. Finally, to the extent plaintiffs seek to sue the President in his individual capacity (they have sued the President in his capacity as "Candidate for the U.S. President in 2012), plaintiffs have not properly served the President pursuant to Fed. R. Civ. P. 4(e), (f), or (g). *See* Fed. R. Civ. P. 4(i)(3). The plaintiffs have also failed to serve their Petition and motion for a temporary restraining order on the Attorney General's Office under Fed. R. Civ. P. 4(i). By the filing of this opposition, federal defendants do not waive any objections to insufficiency of service of process.

### III. LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER

The issuance of a temporary restraining order is an extraordinary remedy and plaintiffs have the burden of proving the propriety of such a drastic remedy by clear and convincing evidence. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (discussing preliminary injunctions); *Granny Goose*

---

[3] Although plaintiffs name the Electoral College as a defendant, the Electoral College is actually comprised of individual electors chosen by each state and the District of Columbia. *See* Art. II, § 1, cl. 2. The electors of each state vote in their homes states, not in a common assembly. *See* U.S. Const. Amend. XII. "The Electoral College itself is not an agency or person subject to suit." *See Hollman v. United States Electoral College*, 2009 WL 1114146, at *1 (W.D. Ark. Apr. 24, 2009).

*Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974). In order to obtain a temporary restraining order, plaintiffs must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of a temporary restraining order; (3) the balance of equities tips in plaintiffs' favor; and (4) a temporary restraining order is in the public's interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the standards of issuance of a temporary restraining order are "substantially identical" to those for issuing a preliminary injunction).

Local Rule 231(b) provides that "[i]n considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." L.R. 231(b). The same rule provides that "[s]hould the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion on either ground." L.R. 231(b). Here, plaintiffs have provided no explanation whatsoever why they waited until December 20, 2012, to file a last-minute motion for a temporary restraining order, six weeks after the General Election took place on November 6, 2012. Plaintiffs' delay constitutes laches and contradicts their allegations of irreparable injury. The Court should deny the motion for a temporary restraining order on this basis alone. *See* L.R. 231(b).

Local Rule 231(c)(4) requires the party seeking a temporary restraining order to submit an affidavit in support of the existence of an irreparable injury. L.R. 231(c)(4). Here, however, plaintiffs' affidavit (Docket No. 12-2) consists of four conclusory sentences that do not explain why plaintiffs will suffer irreparable injury if a temporary restraining order is not entered. The Court should deny the motion for a temporary restraining order on this basis alone. L.R. 231(c)(4).

Local Rule 231(c)(5) requires the party seeking a temporary restraining order to submit an affidavit detailing the notice or efforts to effect notice to the affected parties or counsel or showing good cause why notice should not be given. L.R. 231(c)(5). Here, plaintiffs have not submitted such an affidavit.

Local Rule 231(c)(3) requires the party seeking a temporary restraining order to submit a brief on all relevant legal issues presented by the motion.  L.R. 231(c)(3).  Plaintiffs have failed to submit such a brief.

## IV.  BRIEF OVERVIEW OF THE ELECTORAL PROCESS

Under Article II, section 1, clause 2 of the United States Constitution, the voters of each state choose electors on Election Day to serve in the Electoral College.  The number of electors in each state is equal to the number of members of Congress to which the state is entitled.  *See* Art. II, § 1, cl. 2.   In most states, the political parties nominate their electors at state conventions or central committee meetings.  See www.archives.gov/federal-register/electoral-college.  Generally, each state appoints its electors on a winner-take-all basis, based on the statewide popular vote on Election Day – all electors pledged to the presidential candidate who wins the most votes become electors for that state.  There are a total of 538 electors because there are 435 representatives and 100 senators, plus 3 electors allocated to Washington, D.C. under the Twenty-Third Amendment.  *See* Art. II, § 1, cl. 2.

As soon as the election results are final, the Governor of each State is required to prepare and send to the Archivist of the United States a Certificate of Ascertainment, which is a formal list of the names of the electors chosen in that state, as well as the names of all other candidates for elector, and the number of votes cast for each.  *See* 3 U.S.C. § 6.  In addition, on or before December 17, 2012, the Governor of each state is required to deliver to the electors of his or her state six duplicate-originals of the Certificate of Ascertainment sent to the Archivist of the United States.  *See id.*

The electors chosen on Election Day meet in their respective state capitals on the Monday after the second Wednesday in December (December 17, 2012), at which time they cast their votes on separate ballots for President and Vice-President.  *See* U.S. Const. Amend. XII; 3 U.S.C. §§ 7, 8.  After the electors have voted, they prepare and sign six certificates of their votes containing two distinct lists, one being the votes for President and the other the votes for Vice President.  See 3 U.S.C. § 9; *see also* Jack Maskell & Elizabeth Rybicki, *Counting Electoral Votes: An Overview of Procedures at the Joint Session, Including Objections by Members of Congress* at 2, Congressional Research Service (Nov. 30, 2012).  The electors in each state then attach to these lists the certificate furnished to them by the

Governor; seal the certificates; and send one certificate to the President of the Senate and two certificates to the state's secretary of state. *See* 3 U.S.C. § 11. On the day after their meeting (December 18, 2012), the electors must then forward by registered mail two of the certificates and lists to the Archivist of the United States and one of the certificates and lists to the federal judge in the district where the electors have assembled. *See* 3 U.S.C. § 11.

The electoral votes are counted at a joint session of the Senate and the House of Representatives, meeting in the House Chamber. *See* Jack Maskell & Elizabeth Rybicki, *Counting Electoral Votes: An Overview of Procedures at the Joint Session, Including Objections by Members of Congress* at 2, Congressional Research Service (Nov. 30, 2012). The date for counting electoral votes at the joint session is fixed by law. *See id.* Under 3 U.S.C. § 15, that date is January 6th, although because January 6th in 2013 falls on a Sunday, a Joint Resolution was passed on December 18, 2012, moving the date of the joint session to January 4, 2013. *See* H.J. Res. 122, 112th Cong. (2012). The President of the Senate is the presiding officer. *See* 3 U.S.C. § 15. The President of the Senate opens and presents the certificates of the electoral votes of the states and the District of Columbia in alphabetical order. *See id.* After the votes of each state and the District of Columbia have been opened and read, the votes are counted and the presiding officer announces whether any candidates have received the required majority votes for President and Vice President. *See id.* The Twelfth Amendment requires the winning candidate to receive "a majority of the whole number of Electors appointed." "[A]nnouncement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States." 3 U.S.C. § 15.

Under 3 U.S.C. § 15, when the certificate from each state is read, "the President of the Senate shall call for objections, if any." 3 U.S.C. § 15. An objection must be made in writing and must be signed by at least one Senator and one Representative. *See id.* The objection "shall state clearly and precisely, and without argument, the ground thereof . . . ." *Id.* If and when an objection is made, each house is to meet and debate it separately. *See id.* An objection may be made on the grounds that the electoral vote was not "regularly given" by an elector or that the elector was not "lawfully certified" according to state statutory procedures. *See id.* Both houses must vote separately to agree to the objection to an electoral vote; otherwise, the electoral vote is counted. *See id.*

## V. PLAINTIFFS HAVE FAILED TO ESTABLISH ANY LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs have failed to demonstrate a likelihood of success on the merits of their claims for three independent reasons. First, plaintiffs fail to demonstrate the existence of any personal and specific injury-in-fact traceable to the conduct of any of the defendants that is redressable by the relief they seek and, thus, fail to establish the prerequisites of constitutional standing. Second, the conduct that plaintiffs seek to enjoin, *i.e.*, the counting of electoral college votes at the joint session of Congress on January 4, 2013, and the declaration of who was elected President, is immunized from judicial supervision by the Speech or Debate Clause of Article I of the Constitution. Third, plaintiffs' ultimate request for relief – to enjoin a joint session of Congress in order for the Judiciary to determine whether a candidate for President is a "natural born citizen" within the meaning of the Presidential Qualifications Clause – implicates a political question that renders this action nonjusticiable. These failings require denial of plaintiffs' request for preliminary injunctive relief and dismissal of the complaint.

### A. Plaintiffs Lack Article III Standing

The Court should deny the motion for a temporary restraining order and dismiss the Petition for lack of subject matter jurisdiction because plaintiff cannot establish Article III standing to sue.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). To meet this threshold jurisdictional requirement, a plaintiff must have "standing" to challenge the action sought to be adjudicated. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-04 (1998); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). A party seeking to invoke a federal court's jurisdiction bears the burden of establishing his standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy this burden, plaintiffs must establish the familiar elements of standing. First, they must show an "injury in fact," consisting of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations omitted). Second, plaintiffs must demonstrate the existence of "a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (internal punctuation omitted). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted).

The Supreme Court has emphasized that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). These considerations are particularly important in a case such as this one: "[O]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* at 819-20.

## 1.    Plaintiffs' Claim Is Only A Generalized Grievance

Plaintiffs' claim that Barack Obama is ineligible for the presidency under Article II, section 1 of the United States Constitution amounts to a quintessential generalized grievance that does not confer subject matter jurisdiction upon this Court.

The Supreme Court has consistently held the following:

> [A] plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.

*Lujan*, 504 U.S. at 573-74.

In accordance with this bedrock principle, "standing to sue may not be predicated upon an interest of the kind . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 220 (1974); *accord Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.").

Thus, the requirement that the injury be "particularized" means that it "must affect the plaintiff in a *personal and individual way*." *Lugan,* 504 U.S. at 560 n.1 (emphasis added). "It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he is sustained, or is immediately in danger of sustaining, a direct injury as a result of that action and it is not sufficient that he has merely a general interest common to all members of the public." *Ex parte Levitt*, 302 U.S. 633, 634 (1937) (per curiam); *accord United States v. Richardson*, 418 U.S. 166, 178 (1974) (noting that in *Levitt*, even allegations that "made out an arguable violation of an explicit prohibition of the Constitution" were "held insufficient to support standing because, whatever Levitt's injury, it was one he shared with 'all members of the public'").

The Supreme Court, therefore, has consistently refused to entertain, for lack of injury in fact, citizen suits based on generalized claims of constitutional ineligibility for public office. *See*, *e.g. Ex parte Levitt*, 302 U.S. at 633 (holding that a citizen did not have standing to challenge appointment of Hugo Black to the Supreme Court under the Constitution's Ineligibility Clause, art. I, § 6, cl. 2); *Reservists Comm. to Stop the War*, 418 U.S. at 220-21 (holding that an anti-war group did not have standing to invoke the Incompatibility Clause, art. II, § 6, cl. 2, to have members of Congress stricken from the Armed Forces Reserve List).[4]

---

[4] *See also Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (reaffirming the "lengthy pedigree" of the Court's "refusal to serve as a forum for generalized grievances" in dismissing federal constitutional challenge to Colorado constitutional provision limiting the state's congressional redistricting to once per census); *United States v. Richardson*, 418 U.S. 166, 179 (1974) (holding that a taxpayer did not have standing to obtain information about the expenditures of the Central Intelligence

Lower courts, likewise, have uniformly dismissed for lack of "injury in fact" challenges to the qualifications of a candidate for President of the United States. Most recently, the Ninth Circuit affirmed for lack of standing the dismissal of an action brought by plaintiffs – including candidates for President and elector – alleging that Barack Obama was not qualified to be President. *See Drake v. Obama*, 664 F.3d 774, 784 (9th Cir. 2011) (stating that "none of the plaintiffs could claim that they would be injured by the "potential loss of an election" because the 2008 general election was over before the complaint was filed). The District Court for the District of Columbia has also dismissed for lack of "injury in fact" a similar claim seeking to enjoin President Obama from taking the oath of office as President in 2008 because he allegedly is not a citizen of the United States. *See Cohen v. Obama,* 2008 WL 5191864, *1 (D.D.C. Dec 11, 2008) (holding that the claim presented only a generalized grievance). *Cohen* relied upon *Berg v. Obama*, 574 F. Supp. 2d 509 (E.D. Pa. 2008), a decision in which the District Court for the Eastern District of Pennsylvania dismissed on identical grounds another suit alleging that Barack Obama was ineligible to be President because he allegedly was not a "Natural Born Citizen" of the United States. The court reasoned that "[t]he alleged harm to voters stemming from a presidential candidate's failure to satisfy the eligibility requirements of the Natural Born Citizen Clause is not concrete or particularized enough to constitute an injury in fact sufficient to satisfy Article III standing." *Id.* at 518. The Third Circuit affirmed. *See Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009) (holding that the plaintiff's status as a voter in the 2008 election did not give him standing to challenge Barack Obama's candidacy on grounds similar to those here alleged). *See also Kerchner v. Obama*, 669 F. Supp. 2d 477 (D. N.J.) (dismissing voters' "Natural Born Citizen" challenge to election of President Obama in which the Congress, the President of the Senate, and other officials and entities were named as defendants), *aff'd*, 612 F 3d 204 (3d Cir. 2010) (dismissing appeal as frivolous).

The same result has obtained in numerous other suits challenging the constitutional qualifications of a candidate for President. In *Jones v. Bush*, 122 F. Supp. 2d 713 (N.D. Tex.), *aff'd without opinion*, 244 F.3d 134 (5th Cir. 2000), the Fifth Circuit affirmed the dismissal, for lack of

Agency under the Constitution's Accounts Clause, art I, § 9, cl. 7).

injury in fact, of a suit alleging that George W. Bush and Richard Cheney were ineligible to be President and Vice-President of the U.S., respectively, on the grounds that they were both "inhabitants" of Texas in violation of the requirement of the Twelfth Amendment that the President and Vice President shall not be "inhabitants" of the same state. The court held that plaintiffs' assertion that a violation of the Twelfth Amendment "will harm them by infringing their right to cast a meaningful vote . . . fails to satisfy the Article III requirement of a 'distinct and palpable injury.' . . . This type of injury is necessarily abstract and plaintiffs conspicuously fail to demonstrate how they, as opposed to the general voting population, will feel its effects." *Jones,* 122 F. Supp.2d at 717 (quoting *Warth*, 422 U.S. at 501).

Similarly, in *Hollander v. McCain*, 566 F. Supp. 2d 63 (D.N.H. 2008), the District Court for New Hampshire rejected for lack of "injury in fact" a voter claim that Senator John McCain was not a "Natural Born Citizen" because he was born in the Panama Canal Zone. The Court correctly reasoned that plaintiffs lacked standing because the alleged ineligibility, even if true, "would adversely affect only the generalized interest of all citizens in constitutional governance, and that is an abstract injury.'" *Id.* at 68 (quoting *Schlesinger*, 418 U.S. at 217). The court in *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008), likewise, dismissed for lack of standing another challenge to Senator McCain's eligibility to be President.

The fact that three of the plaintiffs – Edward Noonan, Thomas MacLeran, and Keith Judd – were candidates in the 2012 Presidential election does not transform their generalized grievance into an Article III injury. None of these plaintiffs alleges that he was on the ballot in enough states in the 2012 Presidential election to even hope he could gain the requisite 270 electoral votes to win the Presidency. None of these candidate plaintiffs would have been elected President if Barack Obama were not. As the District of Columbia Circuit held in affirming the dismissal of a similar challenge to the qualifications of the President brought by a write in candidate for President:

> As the district court said, "self declaration as a write-in candidate" is insufficient, *Sibley v. Obama*, 866 F. Supp. 2d 17, 20 (D.D.C. 2012),—both because if it were sufficient any citizen could obtain standing (in violation of Article III of the U.S. Constitution) by merely "self declaring," and because the writ is only available for someone who would obtain the office if the incumbent were ousted, *see Newman*, 238 U.S. at 544, 547, 550–51.

*Sibley v. Obama*, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012).

Moreover, the fact that two of the plaintiffs – James Grinols and Robert Odden – are allegedly Presidential Electors does not transform their generalized grievance into an Article III injury. *See Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1146 (N.D. Cal. 2008) (dismissing a similar challenge, stating "plaintiff has no standing to challenge Senator McCain's qualifications. Plaintiff is a mere candidate hoping to become a California elector pledged to an obscure third-party candidate whose presidential prospects are theoretical at best. Plaintiff has, therefore, no greater state in the matter than a taxpayer or voter."). The Petition does not even allege from which state either of these individuals was designated by their respective parties to be electors.

Accordingly, because plaintiffs' claims "amount to little more than attempts 'to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government,'" *Valley Forge*, 454 U.S. at 483 (quoting *Flast v. Cohen*, 392 U.S. 83, 106 (1968)), they are insufficient to establish "injury in fact," the first requirement of Article III standing.

### 2. Plaintiffs Cannot Demonstrate a Causal Connection Between Their Alleged Injury and the Federal Defendants

Even assuming that plaintiffs have properly pled a legally cognizable injury in fact, which they have not, they cannot show the requisite causation linking their claimed injury to any "putatively illegal conduct of the defendant." *See Valley Forge*, 454 U.S. at 472. Plaintiffs seek relief against Vice President Biden in his capacity as President of the Senate and against the Congress in the opening of the state certificates of electoral votes, the determination of the validity of any objections to those votes, and the counting of those votes. Plaintiffs, however, can trace no injury directly to those acts; indeed, plaintiffs allege nothing illegal or injurious about the conduct of the Vice President or the Congress. Rather, plaintiffs' alleged injuries – not receiving sufficient votes to be elected as President or not having their preferred candidate being elected -- are attributable to the voters themselves in casting their ballots for other candidates, including President Obama, or to the determinations by state officials to qualify candidate Obama to appear on each state's ballot. Plaintiffs' alleged injuries, therefore, are not "fairly traceable to the challenged action of the defendants." *Lujan*, 504 U.S. at 561;

*see also Hollander*, 566 F. Supp. 2d at 70 (stating that claimed injury arising out of Senator McCain's alleged ineligibility did not arise out of challenged actions of defendant McCain).

### 3. Plaintiffs' Alleged Injuries Are Not Redressable by this Suit

Plaintiffs also cannot demonstrate that their alleged injury is "'likely'" to be "'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). Whether all or some of electoral votes in favor of Barack Obama will be counted in the Senate and House is, ultimately, a matter left entirely to the Legislative Branch. *See* 3 U.S.C. § 15 ("the two Houses concurrently may reject the vote or votes when they agree that such vote or votes have not been ... regularly given"). Because the Court may not interfere in the internal deliberations of the joint Houses of Congress,[5] plaintiffs fail to state a claim that may be redressed by any relief that this Court has the power to grant.

In sum, therefore, because Plaintiffs fail to allege an "injury in fact" traceable to putatively illegal conduct of the defendants which would "likely" be redressed by a favorable decision of this Court, they fail to demonstrate Article III standing.

## B. The Speech or Debate Clause Bars This Suit

The Court should deny the motion for a temporary restraining order and dismiss the Petition because, in addition to plaintiffs' lack of standing, their claims are barred by the Speech or Debate Clause of the Constitution.

---

[5] Such relief would be constitutionally intolerable because, among other reasons, the Court lacks authority to order Congress to perform particular legislative acts. *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 500 (1866) ("The Congress is the legislative department of the government; the President is the executive department. Neither can be restrained in its action by the judicial department; though the acts of both, when performed, are, in proper cases, subject to its cognizance."); *Franklin v. Massachusetts*, 505 U.S. 788, 829 (1992) (Scalia, J., concurring) ("we cannot direct . . . the Congress to perform particular legislative duties").

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The Supreme Court has read the Speech or Debate Clause "broadly to effectuate its purposes," which is "to insure that the legislative function the Constitution allocates to Congress may be performed independently." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975). The Clause, where it applies, affords an absolute immunity from all forms or relief, whether for injunction, damages, or declaration. *See Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 732 & n.10 (1980) (establishing that common-law legislative immunity, like that of the Speech or Debate Clause, "is equally applicable to . . . actions seeking declaratory or injunctive relief"). Because the Speech or Debate Clause immunizes members of Congress from both liability and the burdens of litigation, it should be resolved at the outset of litigation. *See Davis v. Passman*, 442 U.S. 228, 235 n.11 (1979).

When the Speech or Debate privilege is raised in defense to a suit, the only question is whether the claims presented "fall within the 'sphere of legitimate legislative activity.'" *Eastland*, 421 U.S. at 506. Legitimate legislative activity protected by the Clause encompasses "anything 'generally done in a session of the House by one of its members in relation to the business before it.'" *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). The Clause accordingly precludes inquiry into "the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation *or with respect to other matters which the Constitution places within the jurisdiction of either House.*" *Gravel v. United States*, 408 U.S. 606, 625 (1972) (emphasis added). "[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503.

The constitutionally-prescribed counting of the electoral votes is unquestionably a "matter[] which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. The Twelfth Amendment provides that, after States transmit their certified electoral votes to the seat of government of the United States, "[t]he President of the Senate shall, in the presence of the Senate and

House of Representatives, open all the certificates and the votes shall then be counted."  U.S. Const., Amend. XII; *see also* 3 U.S.C. § 15.  The Constitution explicitly contemplates that the bare counting of electoral votes does not necessarily end the selection process, for in the event no candidate for President receives a majority of the votes, responsibility for choosing the President passes to the House of Representatives, *id.*, while if no candidate for Vice President receives a majority of the votes, responsibility for choosing the Vice President transfers to the Senate. *Id.*  In short, Congress's role in counting electoral votes is undoubtedly "part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration . . . of . . . matters which the Constitution places within the jurisdiction of either House." *Id.* at 625; *see also Gravel*, 408 U.S. at 624 (acts of voting by Members protected); *Schultz v. Sundberg*, 759 F.2d 714, 717 (9th Cir. 1985) (per curiam) (voting is "clearly legislative in nature.").[6]

Nor is there any doubt that the protections of Speech or Debate immunity are afforded to the Vice President where, in a joint session, he presides as "[t]he President of the Senate" to "open all the certificates."  U.S. Const., Amend. XII.  Where, as here, a legislative function is challenged, the immunity attaches, irrespective of any other roles performed by the challenged party. *See Supreme Court of Virginia*, 446 U.S. at 731-34 (holding that state Supreme Court justices, even though members of the Judicial Branch, were entitled to legislative immunity in action challenging promulgation of disciplinary rules prohibiting attorney advertising); *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) (holding that city mayor, even though a member of executive department of municipal government, was entitled to common law legislative immunity for performing legislative act of formulating budget and in signing ordinance so providing).

Because plaintiffs attempt to enjoin Vice President Biden, as President of the Senate, and the Congress from fulfilling their constitutional function of the counting of the electoral votes by Congress is nothing more than an attempt to interfere with the legislative process committed by the Constitution

---

[6]  Allegations that legislative conduct violates the Constitution or other laws do not evade the Speech or Debate bar. *See Bogan v. Scott-Harris,* 523 U.S. 44, 54-55 (1998) (legislative immunity barred suit against local legislator for "act[] of voting" for what jury found was unconstitutional ordinance).

to that branch of government, the Speech or Debate Clause bars the relief plaintiffs request. Under the Speech or Debate Clause, the Vice President's acts and those of the Congress, therefore, cannot be questioned, or enjoined, in this Court or, as the Constitution commands, "in any other Place." Plaintiffs, thus, fail to demonstrate the likelihood of success on the merits of their claim and the complaint should be dismissed.[7]

## C.    Plaintiffs' Petition Presents a Nonjusticiable Political Question

Beyond the barriers of lack of standing and legislative immunity, the political question doctrine also mandates denial of the motion for a temporary restraining order and the dismissal of this action for nonjusticiability.

The political question doctrine bars adjudication of a case where there has been "a textually demonstrable constitutional commitment of the issue to a coordinate political department" or where adjudication would express a "lack of respect due coordinate branches." *Baker v. Carr*, 369 U.S. 186, 217 (1962). Both factors render this action nonjusticiable.

### 1.    The Constitution Commits to the Congress Alone the Manner in Which It Counts the Electoral Votes for President and Vice President

The Petition seeks to present a nonjusticiable political question because the power of Congress to count the electoral votes is committed by the Constitution to the House and Senate exclusively, and are beyond review in this case.

The Twelfth Amendment to the Constitution commits to Congress alone the responsibility to count the electoral votes for President and Vice President. That textual commitment is of the same quality as the constitutional commitment to the Senate of the power to "try" impeachments, which the

---

[7]    Additionally, this suit is foreclosed by sovereign immunity. *See Keener v. Congress of the United States*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (affirming dismissal because Congress "is protected from suit by sovereign immunity"). It is well established that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), that is barred by sovereign immunity. *See Travelers Ins. Co. v. SCM Corp.*, 600 F. Supp. 493, 497 (D.D.C. 1984) ("It is clear that a claim against a federal employee in his or her 'official capacity' is in effect a claim against the government. The sovereign immunity doctrine cannot be evaded by changing the label on the claims or the parties.").

Supreme Court found constitutes a non-justiciable political question. *See Nixon v. United States*, 506

U.S. 224 (1993). The *Nixon* court explained that how the Senate "tr[ied]" impeachments was

nonjusticiable because no "separate provision of the Constitution" contained an "identifiable textual

limit" upon the Senate's authority to conduct such trials. *Nixon*, 506 U.S. at 237.

By contrast, the *Nixon* Court noted that its decision in *Powell v. McCormack,* 395 U.S. 486

(1969) – which held that the House of Representatives improperly excluded one of its members as

unqualified to serve – was justiciable because, in that case, the House's power to judge the

"Qualifications" of its Members, Article I, section 5, clause 1, was subject to the Qualifications Clause,

Article I, section 2, clause 2 , which expressly identified the three qualifications of membership in the

House: age, citizenship, and inhabitancy. *See Nixon*, 506 U.S. at 236-238. The determination by the

House, therefore, to judge the "Qualifications" of its Members was justiciable in *Powell* because the

House excluded Representative Powell for a reason *other than* the three specified in the Qualifications

Clause. *Id.*. But the Supreme Court in *Nixon* was unequivocal that it was for the House and Senate

*alone* to judge those three qualifications. *Id.* at 237. Any decision, therefore, by a House of Congress

to seat or exclude a Member based on age, citizenship, or inhabitancy *would* present a nonjusticiable

political question that was not subject to challenge in court. *Id.*

In this case, the constitutional provision relied upon in the complaint, the Twelfth Amendment,

in no way limits or defines the authority of Congress to determine which votes to count. Any

objections to the counting of the ballots – including any objection based on the Natural Born

Citizenship Clause – will be determined by the Houses of Congress in joint session.[8] As one court stated in rejecting a "Natural Born Citizen" challenge to Senator McCain's candidacy:

> Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review--if any--should occur only after the electoral and Congressional processes have run their course.

*Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008)[9]; *see also Keyes v. Bowen*, 117 Cal.Rptr.3d 207, 216 (Cal. Ct. App. 2011) (same)

The determination by the Houses of Congress of such objections, like the determination of the Qualifications of Members to those bodies, are thus nonjusticiable and beyond review. *See Nixon*, 506 U.S. at 224; *see also Barry v. United States ex rel. Cunningham,* 279 U.S. 597 (1929) (rejecting *habeas corpus* challenge to Senate procedures for judging validity of election); *Metzenbaum v. FERC*, 675 F.2d 1282, 1287-88 (D.C. Cir. 1982) (per curiam) (holding that a challenge to House procedure regarding consideration of resolution was nonjusticiable); *Consumers Union of United States v. Periodical Correspondents' Assoc.*, 515 F.2d 1341 (D.C. Cir. 1975) (holding that a challenge to rejection of congressional press gallery application was nonjusticiable).

---

[8] Congress also historically has exercised the right not to count certain electoral votes. For example, in 1872, Congress declined to count the votes of three Georgia electors for Democratic candidate Horace Greeley. See Beverly 1. Ross & William Josephson, *The Electoral College And The Popular Vote*, 121. L. & Pol. 665, 706 (1996) ("Ross & Josephson"). Horace Greeley had died before the electors met to vote, and therefore Congress refused to count the three Georgia votes on the ground that they were not cast for a person. *See id.* at 706-07 (noting that members of Congress could well decide that they have an implicit responsibility under the Constitution not to count electoral votes for individuals who are not natural born citizens of the United States, are under the age of 35, or otherwise are unqualified for office under the Constitution).

[9] The Court's comment regarding judicial review was not an indication that such review would ever be appropriate. *See Berg v. Obama*, 586 F.3d 234, 239 ("Berg incorrectly takes that to mean that he can bring suit after members of Congress have declined to object pursuant to 3 U.S.C. § 15. It means no such thing.").

In sum, because the Constitution commits to the Congress alone the manner in which it discharges its duty to count the electoral votes for President and Vice President, plaintiffs' request for injunctive relief should be denied and the complaint should be dismissed as a nonjusticiable political question.

2. **The Court's Consideration of Plaintiffs' Claims Would Intrude Into the Congress' Internal Procedures and, Thus, Would Demonstrate a Lack of Respect for a Co-Equal Branch**

Finally, for a court to engage in the review plaintiffs seek would require an intrusive inquiry into the conduct of a joint session of both Houses of Congress, involving judicial scrutiny and review of internal legislative functions. Judicial intrusion into these matters would express a lack of respect for the Congress as a coordinate branch of government. *See Brown v. Hansen*, 973 F.2d 1118, 1122 (3d Cir. 1992) (per curiam) ("Absent a clear command from some external source of law, we cannot interfere with the internal workings of the Virgin Islands Legislature 'with-out expressing lack of the respect due coordinate branches of government.'") (quoting *Baker*, 369 U.S. at 217).

Indeed, the equitable intervention contemplated by plaintiffs' proposed injunction would greatly encroach on the internal procedures of the House and Senate and be even more "disastrously intrusive" than telling the House of Representatives how to allocate seats on its committees, which the D.C. Circuit has declined to do. *See Vander Jagt v. O'Neill*, 699 F.2d 1166, 1176 (D.C. Cir. 1983). "Merely to state what is sought is to make plain that [plaintiff] propose[s] nothing less than a revolution in the judiciary's relationship to the political branches." *Id.* at 1181 (Bork, J., concurring); *see also Hastings v. United States Senate*, 716 F. Supp. 38, 41 (D.D.C. 1989) (rejecting impeached judge's request to enjoin Senate's impeachment proceedings and stating that "[t]he relief sought by plaintiff . . . would be utterly foreign to our system of divided powers").

"It is no part of the judicial function to supervise or control the business of the executive or legislative departments of the Government." *Trimble v. Johnston*, 173 F. Supp. 651, 653 (D.D.C. 1959). Accordingly, "[c]ourts in this District have regularly rejected other petitions seeking judicial supervision of Congressional proceedings." *Hastings*, 716 F. Supp. at 41. No litigant has ever been awarded a court order instructing Members of Congress on what business they may conduct on the

floor of their chamber or in what manner such activity may be pursued.  As the D.C. Circuit has long

recognized, courts "cannot enjoin legislative debate," *Hearst v. Black*, 87 F.2d 68, 72 (D.C. Cir. 1936),

nor "interfere with or impede the processes of the Congress," *Pauling v. Eastland*, 288 F.2d 126, 128

(D.C. Cir. 1960).

    In sum, under our system of separated powers, the Constitution has specified that the Congress,

and not this Court, is the appropriate institution to address plaintiffs' claims.  For a court to usurp that

power and dictate a result which would surely express a lack of respect for a coequal branch.

**D.    Plaintiffs' Arguments Lack Merit**

    Even if this Court were to address the substance of plaintiffs' claims, they are frivolous and

have been consistently rejected by every state and federal court that has considered them to date.  *See,*

*e.g., Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2748 (U.S. June 11, 2012);

*Sibley v. Obama*, 866 F. Supp. 2d 17, *aff'd*, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012) (per curiam)

*Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010); *Kercher v. Obama*, 669 F. Supp. 2d 477 (D.N.J.

2009), *aff'd*,  612 F.3d 204 (3rd Cir. 2010); *Holister v. Soetoro*, 601 F. Supp. 2d 179 (D.D.C. 2009);

*Berg v. Obama*, 574 F. Supp. 2d 509 (E.D. Pa. 2008), *aff'd*, 586 F.3d 234 (3rd Cir. 2009).

    Plaintiffs claim, for example, that "Barack Hussein Obama (Hereinafter Obama) never provided

any valid documentary evidence of his natural born status, which is required for one to be a candidate

for the U.S. Presidency according to Article 2, section 1 of the U.S. Constitution."  Petition at 14.  The

Constitution, however, does not require a Presidential candidate to provide documentary evidence of

his or her natural born status.  Article II, section 1 simply provides in relevant part that "[n]o person

except a natural born citizen . . . shall be eligible to the office of President."  Plaintiffs have not cited

any authority to support their assertion that a candidate must show them (or the Court) "identification

papers" that are satisfactory to them.  Whether or not the President is in possession of a valid social

security card, selective service registration or any particular type of birth certificate is simply irrelevant

to his eligibility for the Presidency under Article II, section 1 of the Constitution.

    Moreover, the President released his long-form birth certificate on April 27, 2011, and posted a

copy on the White House website.  *See* http://www.whitehouse.gov/blog/2011/04/27/president-obamas-

long-form-birth-certificate.  The certificate confirms the President's birth in Honolulu, Hawaii.  *See id.*;

*Taitz v. Ruemmler*, 2011 WL 4916936, at * 1 n.2  (D.D.C. Oct. 17, 2011).  The Director of the Hawaii

Health Department has attested to the authenticity of the certified copies of the original Certificate of

Live Birth that were provided to the President.  *See* http://hawaii.gov/health/vita-

records/News_Release_Birth-Certificate_042711.pdf ("I have seen the original records filed at the

Department of Health and attest to the authenticity of the certified copies the department provided to

the President that further prove the fact that he was born in Hawaii.");

http://hawaii.gov/health/about/pr/2009/09-063.pdf ("I, Dr. Chiyome Fukino, Director of the Hawaii

State Department of Health, have seen the original vital records maintained on file by the Hawaii State

Department of Health verifying Barack Hussein Obama was born in Hawaii and is a natural-born

American citizen.").  To the extent that any of the affidavits submitted by plaintiffs in support of their

Petition can be read as averring that the President's birth certificate is forged, none of those affidavits is

based on personal knowledge and none of the affidavits set forth any basis for qualifying the affiants as

experts.  Moreover, Plaintiffs have not claimed, much less provided any evidence, that President

Obama was born anywhere but in the United States, and it is well settled that those born in the United

States are considered natural born citizens. *See United States v. Ark*, 169 U.S. 649, 702 (1898); Jack

Maskell, *Qualifications for President and the "Natural Born" Citizenship Eligibility Requirement*,

Congressional Research Service (Nov. 14, 2011).

Finally, although plaintiffs appear to bring their claims as a class action, they have not filed a

motion to certify any of the classes they mention in their Petition pursuant to Fed. R. Civ. P.

23(c)(1)(A).  They have also failed to make any legitimate attempt to satisfy Federal Rule of Civil

Procedure 23's requirements, such as explaining how questions of law or fact common to class

members predominate and why a class action is superior to individual litigation in more fairly and

efficiently resolving the litigation.

## VI.  REMAINING FACTORS COUNSEL AGAINST INJUNCTIVE RELIEF

**A.**     **Plaintiffs Are Threatened With No Irreparable Harm In The Absence**
         **Of Entry Of Their Requested Injunction**

1   Plaintiffs must – but cannot – show irreparable injury in the absence of the extraordinary relief

2   they seek.  Such injury must be "concrete and immediate to warrant extraordinary injunctive relief, and

3   vague or speculative injury will not suffice." *Newdow v. Bush*, 355 F. Supp. 2d 265, 291 (D.D.C.

4   2005) (refusing to enjoin Presidential inaugural ceremony), *denying emergency motion for injunction*

5   *pending appeal*, 2005 WL 89011 (D.C. Cir. Jan. 16, 2005).  "[T]he threatened injury must be of such

6   imminence that there is a clear and present need for equitable relief to prevent irreparable harm,

7   because injunctions are not intended 'to prevent injuries neither extant nor presently threatened, but

8   only merely 'feared.'" *Newdow*, 355 F. Supp. 2d at 292 (citing *Committee in Solidarity v. Sessions*,

9   929 F.2d 742, 745-46 (D.C. Cir. 1991)).

10  Plaintiffs fail to make such a showing here, largely for the same reasons that they fail to

11  demonstrate any "injury in fact" to establish constitutional standing.  In short, because none of the

12  plaintiffs has any concrete, personalized, or particularized interest in preventing the counting of votes

13  cast by electors, none can establish the kind of irreparable injury that warrants extraordinary injunctive

14  relief.  Plaintiffs will not, therefore, suffer any irreparable harm if the Court declines to enjoin the Vice

15  President and the Congress from fulfilling their constitutional duty to count the electoral votes.[10]

16  **B.      The Substantial Interests of Other Interested Parties and of the Public Will be Harmed if**
17  **Plaintiffs are Granted the Preliminary Relief They Seek.**

18  Because any preliminary relief would throw the result of the 2012 Presidential election into

19  doubt, disrupt the continuity of governance, and intrude into the internal matters entrusted by the

20  Constitution to the Congress, there can be no question that the grant of the injunction that Plaintiffs

21  seek would substantially harm the interests other interested parties, including the Congress and all

22  Americans, including over a hundred million voters, who have an interest in the final and conclusive

23  resolution of this election.   Such concerns are magnified by the fact that the relief that plaintiffs' seek

24

25      [10] Plaintiffs unexcused delay in bringing in this suit only days before the counting of the ballots
26  also "implies a lack of . . . irreparable harm." *See Newdow*, 355 F. Supp. 2d at 292 (concluding same
    with regard to suit filed one month before inaugural ceremony) (citing *Oakland Tribune, Inc. v.*
27  *Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *GTE Corp. v. Williams*, 731 F.2d 676, 678-79
    (10th Cir. 1984); *Nat'l Council of Arab Americans v. City of New York*, 331 F. Supp. 2d 258, 265-66
28  (S.D.N.Y.2004)).

would constitute a mandatory preliminary injunction that would alter the status quo by precluding congressional determination of any objections to the electoral count and that the preliminary relief sought would constitute the ultimate relief in the case with respect to the 2013 counting of the votes. *See Nat'l Conference on Ministry to Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (mandatory preliminary injunction should not issue unless the facts and law clearly favor the movant); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.").

Furthermore, where plaintiffs plead nothing other than a wholly attenuated claim to injury, no public interest is served by granting the relief plaintiffs seek. To the contrary, unsettling the results of the election and disrupting the operation of Congress on the basis of plaintiffs' conclusory allegations works an immeasurable harm to the public.  In such circumstances, plaintiffs' motion for a temporary restraining order should be denied.

## VII.  CONCLUSION

For the foregoing reasons, plaintiffs' motion for a temporary restraining order should be denied and the Petition should be dismissed with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

BENJAMIN B. WAGNER
United States Attorney

</div>

Date:  December 26, 2012            */s/ Edward A. Olsen*_____

By     EDWARD A. OLSEN
Assistant United States Attorney