1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES GRINOLS, et al.,                    No.  12-cv-02997-MCE-DAD

12                  Plaintiffs,

13        v.                                    **ORDER**

14   ELECTORAL COLLEGE, et al.,

15                  Defendants.

16

17        On December 20, 2012, Plaintiffs Edward Noonan, Keith Judd, Thomas Gregory

18   MacLeran, James Grinols and Robert Odden ("Plaintiffs") moved the Court for a

19   temporary restraining order to prevent the following events from occurring:

20   (1) California's Secretary of State and Governor from certifying the Certificate of

21   Ascertainment; (2) the Electoral College from tallying the 2012 presidential election

22   votes; (3) the Governor of California from forwarding the Certificate of Electoral Vote to

23   the United States Congress;[1] (4) the President of the United States Senate from

24   presenting the Certificate of Electoral Vote to the United States Congress;

25   _____

26        [1] California officials completed the Certificate of Ascertainment for California's electors of
     President and Vice President chosen in the 2012 general election on December 15, 2012 and the
27   Certificate of Vote for the same offices on December 17, 2012.  (ECF No. 26.)  These Certificates were
     sent to Congress in December 2012.  Id.  Plaintiffs, therefore, request that the Court stop an action that
28   has already taken place.  The Court cannot prevent California from doing what it has already done.  Thus,
     Plaintiffs' request for relief with respect to California is moot.

                                          1

(5) the United States Congress from confirming the Presidential election results[2]; and (6) President Barack H. Obama ("President Obama") from taking the oath of office on January 20, 2013.  (ECF No. 12.)  Plaintiffs argue that President Obama is not eligible to be the President of the United States because he is not a "natural born U.S. Citizen." (ECF Nos. 2, 12, 30.)  As such, Plaintiffs sued to prevent the Electoral College from counting California's electoral votes, and at the hearing Plaintiffs argued that the Court should prevent the Electoral College from counting any 2012 presidential election votes for President Obama.  In support of their argument, Plaintiffs allege that President Obama is using a stolen Connecticut social security number, a forged short-form birth certificate, a forged long-form birth certificate, and a forged selective service certificate as proof that he is a natural born American citizen.  The Court held a hearing on the Motion for Temporary Restraining Order on January 3, 2013, during which both Plaintiffs and Defendants made oral arguments to the Court.  After careful consideration of the parties' briefs and exhibits prior to the hearing and the oral arguments presented during the hearing, the Court orally denied Plaintiffs' request for emergency injunctive relief that same day.[3]  To the extent that there is any inconsistency between this Order and the Court's ruling from the bench, the terms of this Order control.

**TEMPORARY RESTRAINING ORDER STANDARD**

The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction.

///

---

[2] Each state's electoral votes are counted in a joint session of Congress in January in the year following the meeting of the electors.

[3] The Court held the temporary restraining order hearing out of an abundance of caution.  As discussed at the hearing, the Court has discretion to rule on motions with or without oral argument pursuant to Federal Rule of Civil Procedure 78 and Eastern District of California Local Rule 230.

1   See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974) (temporary

2   restraining orders "should be restricted to serving their underlying purpose of preserving

3   the status quo and preventing irreparable harm just so long as is necessary to hold a

4   hearing, and no longer"); see also Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d

5   1126, 1131 (9th Cir. 2006); Dunn v. Cate, No. CIV 08-873-NVW, 2010 WL 1558562, at

6   *1 (E.D. Cal. April 19, 2010).

7          Issuance of a temporary restraining order, as a form of preliminary injunctive

8   relief, is an extraordinary remedy, and Plaintiffs carry the burden of proving the propriety

9   of such a remedy.  See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  In general,

10   the showing required for a temporary restraining order and a preliminary injunction are

11   the same.  Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839

12   (9th Cir. 2001).  The party requesting preliminary injunctive relief must show that "he is

13   likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

14   of preliminary relief, that the balance of equities tips in his favor, and that an injunction is

15   in the public interest."  Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008);

16   Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009).

17

18                                             **ANALYSIS**

19   **A.        Plaintiffs Are Unlikely To Succeed On The Merits**

20

21          In order to qualify for injunctive relief, Plaintiffs must, "as an irreducible minimum,"

22   demonstrate a "fair chance of success" that their claims will ultimately prevail on the

23   merits.  See, e.g., Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th

24   Cir. 1995).  This means that Plaintiffs must demonstrate some likelihood of obtaining a

25   favorable result in their case in chief.  A&M Records, Inc. v. Napster, Inc., 239 F.3d

26   1004, 1005 n.3 (9th Cir. 2001); Original Appalachian Artworks v. Topps Chewing Gum,

27   642 F. Supp. 1031, 1034 (N.D. Ga. 1986).

28   ///

1   No matter how severe or irreparable the injury asserted, an injunction may not issue if

2   the moving party's claims are so legally untenable that there is virtually no chance of

3   prevailing on the merits.  Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 180 (5th Cir. 1975).

4

5       **1.    Plaintiffs' Requested Relief Violates the Separation of Powers**
              **and Political Question Doctrines**

6

7           To understand why Plaintiffs' claims are legally untenable, a brief overview of the

8   United States Constitution is necessary.  The United States Constitution divided the

9   federal government into three co-equal branches of government with separate and

10  unique roles and responsibilities.  Article I of the United States Constitution assigns the

11  legislative branch various duties, including the power "to make all laws which shall be

12  necessary and proper for carrying into execution . . . all powers vested by [the]

13  Constitution."  U.S. Const. art. I, § 8, cl. 18.  Article II, the executive branch, of the

14  Constitution empowers the President to be Commander-in-Chief of the armed forces,

15  grant reprieves and pardons, make treaties, and nominate ambassadors, federal judges,

16  and the heads of federal agencies.  U.S. Const. art. II, § 2, cl.1- cl. 2.  Article III, the

17  judicial branch, defines and limits the jurisdiction of the Federal Courts.  U.S. Const. art.

18  III.  The Federal Courts have the power to interpret the Constitution, treaties, and the

19  laws of the United States.  Marbury v. Madison, 1 Cranch 137 (1803).  To function as

20  intended, each branch of government must respect the branches'' separate and

21  independent power.  Moreover, as one federal court has emphasized, "there is a

22  longstanding legal authority that the judiciary lacks the power to issue an injunction or

23  declaratory judgment against the co-equal branches of the government—the President

24  and the Congress."  Newdow v. Bush, 355 F. Supp. 2d 265, 280 (D.D.C. 2005).

25  ///

26  ///

27  ///

28  ///

4

1    At the hearing, Plaintiffs' counsel argued that "common-sense" demands the

2 Court interpret the United States Constitution as requiring the President of the United

3 States to have a valid birth certificate, social security number, and selective service

4 certificate.  However, in deciding the merits of a case, the Court cannot simply rely on

5 suspicions and what Plaintiffs claim is "common sense."  To be clear, the Court

6 understands that "common sense," has its place in the political process.  However,

7 courts must base their decisions on the Constitution, statutes, rules, and regulations

8 passed by the legislative branch and signed into law by the executive branch.

9 Accordingly, in the present case, the Court must look to the Constitutional requirements

10 to serve as the President of the United States.  Article II provides that the President must

11 be: (1) a natural born citizen or a citizen of the United States when the states ratified the

12 Constitution; (2) at least thirty-five years old; and (3) a United States resident for fourteen

13 years.  U.S. Const. art. II, § 1, cl. 5.[4]  Article II does not require the President (or a

14 candidate for President) to present his short-form birth certificate, long-form birth

15 certificate, social security card, or any form of identification, to anyone.

16    Moreover, since 2009, when President Obama was first inaugurated, no laws

17 have been enacted to make proof of "natural born citizen[ship]" a requirement under the

18 law.  In short, Plaintiffs have not provided any legal support for their proposition that a

19 presidential candidate must provide a copy of his or her birth certificate or any other

20 documentation to be eligible for office.  The Court is not the popularly elected branch of

21 government constitutionally empowered to pass new laws.  Because the Court must

22 base its decisions on the Constitution and the laws of the United States, and no law

23 exists that requires the President to present proof of natural born citizenship, the Court

24 cannot require that President Obama present, or even possess, such documentation.

25 ///

26    [4] The relevant portion of Article II, Section 1 originally provided: "No person except a natural born
citizen, or a citizen of the United States, at the time of the adoption of this Constitution, shall be eligible to

27 the office of President; neither shall any person be eligible to that office who shall not have attained to the
age of thirty-five years, and been fourteen years a resident within the United States."  U.S. Const. art. II,

28 § 1, cl. 5.

5

1    As such, Plaintiffs cannot show that they have a likelihood of succeeding on the merits of

2    their claim.  If Plaintiffs want the law to require the President to present such

3    documentation, Plaintiffs must lobby Congress—the branch of government that is

4    constitutionally empowered to pass new laws—and not the Court, to draft and enact a

5    bill incorporating their desired requirements.

6           Further, Plaintiffs allege that President Obama has committed treason, fraud, and

7    conspiracy to fabricate proof that he is a natural born American citizen.  (ECF Nos. 12

8    and 30.)  Again, Plaintiffs' relief here does not lie in federal courts because the

9    Constitution assigns it to another branch of government.  If Plaintiffs believe that

10   President Obama has violated the law, their remedy is to alert Congress to the alleged

11   violation of the law.  Congress could then initiate impeachment proceedings with the aid

12   of an independent and special prosecutor.  U.S. Const. art. I, § 2, cl. 5; U.S. Const. art. I,

13   § 3, cl. 6; U.S. Const. art. I, § 7.

14          The political question doctrine arises out of the Constitution's division of powers,

15   and provides that certain questions are political as opposed to legal, and therefore off

16   limits to the Court.  See Corrie v. Caterpillar, Inc., 503 F.3d 974, 980 (9th Cir. 2007)

17   ("The Supreme Court has indicated that disputes involving political questions lie outside

18   of the Article III jurisdiction of federal courts.").  The doctrine exists because the

19   Constitution prohibits "a court from interfering in a political matter that is principally within

20   the dominion of another branch of government."  Banner v. U.S., 303 F. Supp. 2d 1, 9

21   (D.D.C. 2004) (citing Spence v. Clinton, 942 F. Supp. 32, 39 (D.D.C. 1996)).  The

22   doctrine of separation of powers requires that political issues be resolved by the political

23   branches rather than by the judiciary.  See Corrie, 503 F.3d at 980.  In other words,

24   "[t]he political question doctrine serves to prevent the federal courts from intruding

25   unduly on certain policy choices and value judgments that are constitutionally committed

26   to Congress or the executive branch."  Koohi v. U.S., 976 F.2d 1328, 1331 (9th Cir.

27   1992).

28   ///

1    To determine whether an issue is a "political question" that the Court is barred

2    from hearing, the Court considers whether the matter has "in any measure been

3    committed by the Constitution to another branch of government." Baker v. Carr,

4    369 U.S. 186, 210 (1962). The Supreme Court has set forth six factors indicating the

5    existence of a political question. Id. at 217. The first factor—whether there is "a textually

6    demonstrable constitutional commitment of the issue to a coordinate political

7    department"—is the one most relevant to the present case. Id.

8    The natural born citizen clause "is couched in absolute terms of qualification and

9    does not designate which branch should evaluate whether the qualifications are fulfilled."

10   Barnett v. Obama, No. SACV 09-0082 DOC (ANx), 2009 WL 3861788, at *12 (C.D. Cal.

11   Oct. 29, 2009). Accordingly, the Court must look to the text of the Constitution to

12   determine whether the Constitution "speaks to which branch of government has the

13   power to evaluate the qualifications of a president." Id. The Court finds that numerous

14   articles and amendments of the Constitution together make clear that the issue of the

15   President's qualifications and his removal from office are textually committed to the

16   legislative branch, and not the Courts. First, Article II, Section1 of the Constitution

17   established the Electoral College as the means of electing the President, but the

18   Constitution also empowers "Congress [to] determine the time of choosing the electors,

19   and the day on which they shall give their votes . . . ." U.S. Const. art. II, § 1. The

20   Twelfth Amendment empowers the President of the Senate (who is the Vice President of

21   the United States) to preside over a meeting between both the House of

22   Representatives and the Senate in which the Vice President counts the electoral votes.

23   U.S. Const. amend. XII. If no candidate receives a majority of presidential votes, the

24   Twelfth Amendment authorizes the House of Representatives to choose a President

25   between the top three candidates. Id. The Twentieth Amendment empowers Congress

26   to create a procedure in the event that neither the President-elect nor Vice President-

27   elect qualifies to serve as President. U.S. Const. amend. XX, § 4.

28   ///

1   Additionally, the Twenty-Fifth Amendment provides for removal of the President should

2   he be unfit to serve.  U.S. Const. amend. XXV.  Finally, and perhaps most importantly,

3   the Constitution gives Congress, and Congress alone, the power to remove the

4   President.  U.S. Const. art. I, § 2, cl. 5; U.S. Const. art. I, § 3, cl. 6; U.S. Const. art. I, § 7.

5   Nowhere does the Constitution empower the Judiciary to remove the President from

6   office or enjoin the President of the United States from taking office.

7        These various articles and amendments of the Constitution make it clear that the

8   Constitution assigns to Congress, and not the Courts, the responsibility of determining

9   whether a person is qualified to serve as President.  As such, the question presented by

10   Plaintiffs in this case—whether President Obama may legitimately run for office and

11   serve as President—is a political question that the Court may not answer.  If the Court

12   were to answer that question, the Court would "[interfere] in a political matter that is

13   principally within the dominion of another branch of government."  See Banner, 303 F.

14   Supp. 2d at 9.  This Court, or any other federal court, cannot reach a decision on the

15   merits of a political question because doing so would ignore the Constitutional limits

16   imposed on the courts.  Accordingly, Plaintiffs ask the Court to answer a question the

17   Constitution bars the Court from answering.

18        In sum, Plaintiffs cannot show that they are likely to succeed on the merits of their

19   claim because they ask the Court to stretch the Constitution's meaning to find

20   requirements for serving as President that exist nowhere in the document, and because

21   they ask the Court to usurp the duties of the legislative branch.  There are inherent limits

22   on judicial capabilities that limit the Court from providing the injunctive relief that Plaintiffs

23   request.

24   ///

25   ///

26   ///

27   ///

28   ///

1

**2.   Courts Have Repeatedly Rejected Plaintiffs' Argument**

2

3       Even though the Court believes that it ultimately cannot reach the merits of

4   Plaintiffs' case, it can nonetheless opine on the merits for the purposes of the temporary

5   restraining order.  However, for the purposes of the temporary restraining order, the

6   Court may discuss the merits of this case even if the Court will ultimately be barred from

7   reaching a decision on the merits.

8       Courts across the country have uniformly rejected claims that President Obama is

9   ineligible to serve as President because his Hawaiian birth certificate is a fake or is

10   forged.  See Kerchner v. Obama, 612 F.3d 204 (3d Cir.), cert. denied, 131 S. Ct. 663

11   (2010); Hollister v. Soetoro, 601 F. Supp. 2d 179, 180 (D.D.C. 2009), aff'd, 368 F. App'x

12   154 (D.C. Cir. 2010); Berg v. Obama, 574 F. Supp. 2d 509 (E.D. Pa. 2008), aff'd, 586

13   F.3d 234 (3d Cir. 2009); Wrotnowski v. Bysiewicz, 958 A.2d 709 (Conn.), stay denied,

14   129 S. Ct. 775 (2008); Ankeny v. Governor of State of Indiana, 916 N.E.2d 678 (Ind. Ct.

15   App. 2009).

16       Further, Plaintiffs' counsel has filed several similar lawsuits alleging that President

17   Obama is ineligible to hold office as President.  Each and every one of these lawsuits

18   filed by Plaintiffs' counsel has failed.  See Taitz v. Astrue, 806 F. Supp. 2d 214 (D.D.C.

19   2011) (denying plaintiffs' motion for reconsideration), aff'd, 2012 WL 1930959 (D.C. Cir.

20   May 25, 2012); Taitz v. Ruemmler, No. 11-1421 (RCL), 2011 WL 4916936 (D.D.C.

21   Oct.17, 2011) (granting defendant's motion to dismiss and dismissing plaintiff's suit with

22   prejudice), aff'd, No. 11-5306, 2012 WL 1922284 (D.C. Cir. May 25, 2012); Taitz v.

23   Obama, 707 F. Supp. 2d 1 (D.D.C. 2010) (granting government's motion to dismiss,

24   denying plaintiff's motion for preliminary injunction as moot, and dismissing case),

25   reconsideration denied, 754 F. Supp. 2d 57 (D.D.C. 2010); Cook v. Good,

26   No. 4:09-cv-82 (CDL), 2009 WL 2163535 (M.D. Ga. July 16, 2009) (dismissing case for

27   lack of subject matter jurisdiction); Rhodes v. MacDonald, No. 4:09-CV-106 (CDL), 2009

28   WL 2997605 (M.D. Ga. Sept. 16, 2009) (denying plaintiff's motion for temporary

1   restraining order and dismissing plaintiff's complaint in its entirety), cert. denied, 131 S.

2   Ct. 918 (2011); Barnett, 2009 WL 3861788 (granting defendants' motion to dismiss),

3   aff'd sub nom. Drake v. Obama, 664 F.3d 774 (9th Cir. 2011), and order clarified, No. SA

4   CV 09-0082 DOC (ANx), 2009 WL 8557250 (C.D. Cal. Dec. 16, 2009); Keyes v. Bowen,

5   189 Cal. App. 4th 647, 661 (Cal. Ct. App. 2010), cert. denied, 132 S. Ct. 99 (2011)

6   (upholding on appeal a state Superior Court's ruling sustaining demurrers without leave

7   to amend).

8         In light of the previous decisions, as well as Plaintiffs' attorney's lengthy track

9   record of repeating similar arguments in courts throughout the country, Plaintiffs simply

10   cannot, in good faith, argue that their case is likely to succeed on the merits.[5]

11

12       **B.**    **Remaining Temporary Restraining Order Factors**

13

14         In order to be entitled to emergency injunctive relief, Plaintiffs must also

15   demonstrate that they are "likely to suffer irreparable harm in the absence of preliminary

16   relief, that the balance of equities tips in [their] favor, and that an injunction is in the

17   public interest." Winter, 555 U.S. at 20. Plaintiffs have failed to make the requisite

18   showing.

19         First, to satisfy the "irreparable harm" requirement, Plaintiffs must show "potential

20   harm which cannot be redressed by a legal or an equitable remedy following a trial."

21   Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3rd Cir.1992). Plaintiffs' moving

22   papers do not clearly state what "irreparable injury" Plaintiffs will suffer in the absence of

23   the requested injunctive relief.

24

25        [5] Plaintiffs' counsel has other "good faith" problems in this case. At the January 3 hearing, Plaintiffs' counsel urged the Court to accept her oral "declaration under penalty of perjury" that Federal

26   Defendants had been properly served as proof of compliance with Fed. R. Civ. P. 4 (i)'s service requirements. One day after the hearing, Plaintiffs filed an affidavit from a process server alleging that the

27   process server served President Obama, Vice President Biden, the Electoral College, Congress, and the Department of Justice on January 4, 2013. This affidavit casts additional doubts on Plaintiffs' counsel's

28   assertion at the January 3 hearing that Defendants had been properly served prior to the temporary restraining order hearing.

1  Plaintiffs argued that the irreparable injury they will suffer is the "critical harm to the rule

2  of law." (ECF No. 12, at 18.)  However, "[c]ritical harm to the rule of law" is not a

3  specific, irreparable harm Plaintiffs will face absent emergency injunctive relief.  Abstract

4  harm to "the rule of law" does not warrant the issuance of emergency injunctive relief.

5  Further, as articulated above, a temporary restraining order is designed to

6  maintain the status quo between the parties before the Court can reach the merits of

7  Plaintiffs' claims.  See Granny Goose Foods, 415 U.S. at 438-39.  As the Supreme Court

8  explained, "[t]he purpose of a preliminary injunction is merely to preserve the relative

9  positions of the parties until a trial on the merits can be held."   Univ. of Tex. v.

10  Camenisch, 451 U.S. 390, 395 (1981).

11  Plaintiffs ask the Court to do something that has never been done in the history of

12  this nation: to enjoin the U.S. Congress from counting electoral votes and to prevent the

13  President-elect from taking the oath of office.  During the hearing, Plaintiffs' counsel

14  repeatedly argued that President Obama is the "President Elect" and that the requested

15  injunctive relief would maintain the status quo because Plaintiffs sued President Obama

16  as the "President Elect, and not as a sitting President."  As the Court pointed out to

17  Plaintiffs' counsel at the hearing on her motion, Plaintiffs' counsel is plainly wrong.  The

18  Twentieth Amendment provides that the term of the President ends at noon on the

19  twentieth day of January.  U.S. Const. amend. XX, § 1.  President Obama, as an

20  incumbent, therefore has the dual status of being both the President and the President

21  Elect.  Judge Carter, a District Judge for the Central District of California, accurately

22  summarized the outcome of granting the relief requested by plaintiffs in a substantially

23  similar case brought by Plaintiffs' counsel several years ago:

24  ///

25  ///

26  ///

27  ///

28  ///

11

1

2

3

4

5

6

7

8

9

> In order for Plaintiffs' alleged injury to be fully addressed, Plaintiffs would have the Court intervene, upheave the results of a national election, declare the President illegitimate, shut down the functioning of the government of the United States, and leave this country defenseless. . . . [Further,] redressing the injury of competing in an unfair election would require that the Court order a new national presidential election.  Instead of impeachment, which would allow succession by the Vice President and continuation of the order of a functioning government, Plaintiffs seek to shut down the government through an injunction and install a replacement government through a new election.   In other words, if the political candidates' harm is based on their inability to compete against constitutionally qualified candidates, in order to redress that harm the Court would not only have to remove the President, it would have to order a new national election.

10   <u>Barnett</u> , 2009 WL 3861788, at *11.  Thus, as Defendants pointed out, granting the

11   emergency injunctive relief requested by Plaintiffs would not only throw the result of the

12   2012 Presidential election into doubt, but also "disrupt the continuity of governance, . . .

13   intrude into the internal matters entrusted by the Constitution to the Congress, . . . [and]

14   would substantially harm the interests [of] other interested parties, including the

15   Congress and all Americans . . . who have an interest in the final and conclusive

16   resolution of this election."  (<u>See</u> ECF Nos. 25 at 23.)

17

18                                        **CONCLUSION**

19

20        For the reasons stated above, Plaintiffs failed to show that they are likely to

21   succeed in the courts.  Plaintiffs presented their case to the wrong branch of

22   government.  Plaintiffs have failed once again and not because there are "dishonest and

23   corrupt judges" across the country, as Plaintiffs' counsel repeated during the hearing on

24   the request for a temporary restraining order.  Instead, Plaintiffs have failed in the

25   Courts, and will undoubtedly continue to fail in the Courts, because they ask the Court to

26   supplant the legislative branch and disregard the fundamental doctrine of separation of

27   powers.

28   ///

1    Despite the Court's grave concerns about Plaintiffs' ability to succeed on the

2    merits, the Court held a hearing on Plaintiffs' request for a temporary restraining order to

3    give Plaintiffs a chance to be heard and argue their case.  At the hearing, Plaintiffs failed

4    to demonstrate that they will suffer any irreparable injury, that the balance of harms tips

5    in their favor, or that the public interest will be served by granting the requested

6    injunctive relief.  Plaintiffs have provided this Court with no authority to support their

7    position, other than their own "common sense."  Accordingly, Plaintiffs' Motion for a

8    Temporary Restraining Order is DENIED.

9

10   Dated:  January 16, 2013

11   _____

12   MORRISON C. ENGLAND, JR, CHIEF JUDGE
     UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28