1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES GRINOLS, et. al.,                    No.  2:12-cv-02997-MCE-DAD

12                Plaintiffs,

13        v.                                     **MEMORANDUM AND ORDER**

14   ELECTORAL COLLEGE, et. al.,

15                Defendants.

16

17        The operative First Amended Complaint ("FAC") names the following plaintiffs:

18   (1) James Grinols ("Grinols"), a 2012 California Republican party elector; (2) Edward

19   Noonan ("Noonan"), allegedly  the American Independent Party's 2012 presidential

20   candidate; (3) Thomas MacLeran ("MacLeran"), a presidential candidate; (4) Robert

21   Odden ("Odden"), a 2012 California Libertarian party elector; (5) Keith Judd ("Judd"), a

22   2012 Democratic primary candidate in West Virginia; and (6) Orly Taitz ("Taitz"),

23   Plaintiffs' counsel and a California voter (collectively referred to as "Plaintiffs").  (ECF

24   No. 69).  The FAC lists the following Defendants: (1) California Governor Edmund G., Jr.

25   ("Governor Brown"); (2) California Secretary of State Debra Bowen ("Secretary Bowen");

26   (3) the Electoral College; (4) President of the Senate, Vice President Joseph Biden, Jr.

27   ("Vice President Biden");

28   ///

(5) the United States Congress ("Congress"); and (6) President Barack H. Obama ("President Obama").[1]  (ECF No. 69.)

In their FAC, Plaintiffs allege that President Obama is not eligible to be the President of the United States because he is not a "natural born" U.S. Citizen, as required by the United States Constitution.  (Id.)  Further, according to Plaintiffs, President Obama uses a stolen Connecticut social security number, a forged short-form birth certificate, a forged long-form birth certificate, and a forged selective service certificate as proof that he is a natural born American citizen.  (Id.)  Finally, Plaintiffs' FAC contains a claim alleging violations of California Elections Code § 2150 by California Defendants.  Plaintiffs allege that over one-and-one-half million of California voter registration records contain falsified or missing data with respect to those voters' place of birth, which allegedly makes those voter registrations invalid under California law.  (Id.)  Accordingly, Plaintiffs ask the Court for "declarative and injunctive relief to clean up California voter roles [sic] and [have] a special election."  (Id.)

On April 22, 2013, the Court heard oral arguments regarding California Defendants' and Federal Defendants' Motions to Dismiss Plaintiffs' Amended Complaint. After careful consideration of the parties' filings and exhibits prior to the hearing, as well as oral arguments made during the hearing, the Court orally dismissed Plaintiffs' Complaint without leave to amend.  This Order provides further analysis regarding the Court's ruling from the bench.  To the extent that there is any inconsistency between this Order and the Court's ruling from the bench, the terms of this Order control.

///

///

///

///

///

_____

[1] For the purposes of this Order, Governor Brown and Secretary Bowen are collectively referred to as "California Defendants."  The Electoral College, Vice President Biden, Congress, and President Obama are collectively referred to as "Federal Defendants."

2

1

## LITIGATION HISTORY

2

3       On December 13, 2012, Plaintiffs filed their original Complaint and "Petition for

4   Extraordinary Emergency Writ of Mandamus/Stay of Certification of Votes for

5   Presidential Candidate Obama due to elections fraud and his use of

6   invalid/forged/fraudulently obtained IDs" ("Plaintiffs' Petition").  (ECF No. 2.)  On

7   December 14, 2012, the Court interpreted Plaintiffs' Petition to be an Application for a

8   Temporary Restraining Order ("TRO").  (ECF No. 8.)  The Court denied Plaintiffs'

9   Petition for failure to comply with the requirements of Local Rule 231(c), which governs

10  the procedure for filing a TRO application.  (Id.)  In its ruling, the Court instructed

11  Plaintiffs to file a corrected TRO application within a week.  (ECF No. 12.)

12      On December 20, 2012, Plaintiffs moved for a TRO to prevent the following

13  events from occurring: (1) Secretary Bowen and Governor Brown certifying the

14  Certificate of Ascertainment; (2) the Electoral College tallying the 2012 presidential

15  election votes; (3) Governor Brown forwarding the Certificate of Electoral Vote to the

16  United States Congress; (4) Vice President Biden presenting the Certificate of Electoral

17  Vote to Congress; (5) the United States Congress confirming the Presidential election

18  results; and (6) President Obama taking the oath of office on January 20, 2013.  (Id.)  On

19  January 3, 2013, the Court denied Plaintiffs' Motion for Temporary Restraining Order.

20  (ECF Nos. 48 and 52.)

21      On February 11, 2013, Plaintiffs filed the operative FAC.  (ECF No. 69.)  Presently

22  before the Court are a Motion to Dismiss Plaintiff's FAC filed by Federal Defendants on

23  February 15, 2013 (ECF No. 71), and a Motion to Dismiss the FAC filed by California

24  Defendants on February 28, 2013 (ECF No. 73).

25  ///

26  ///

27  ///

28  ///

3

1

**THE 2012 PRESIDENTIAL ELECTION HISTORY**

2

3       A brief overview of American presidential elections generally and the 2012

4    Presidential election in particular is necessary for better understanding Plaintiffs'

5    allegations in this case.[2]   The 2012 presidential election was held on November 6, 2012.

6    Nationally, President Obama won the popular vote, earning 62,611,250 popular votes to

7    Governor Mitt Romney's ("Governor Romney") 59,134,475 popular votes.

8    (http://www.washingtonpost.com/wp-srv/special/politics/election-map-2012/president/,

9    *Washington Post*, 2012 Election Results.)  In California, President Obama defeated

10   Governor Romney by about 3 million votes and a margin of 60.2% to 37.1%.  (Cal. Defs'

11   Request for Judicial Notice ("RJN"),[3] ECF No. 75, Ex. D.)

12       The popular national vote does not determine the winner of American presidential

13   races.  Instead, the U.S. Constitution created the Electoral College to elect the President

14   and Vice President of the United States.  Under Article II, section 1, clause 2 of the U.S.

15   Constitution, the voters of each state choose electors on Election Day to serve in the

16   Electoral College.  The number of electors in each state is equal to the number of

17   members in Congress to which the state is entitled.  U.S. Const. art. II, § 1, cl. 2.  There

18   are a total of 538 electors because there are 435 representatives and 100 senators, plus

19   3 electors allocated to Washington, D.C., under the Twenty-Third Amendment.  U.S.

20   Const. art. II, § 1, cl. 2.  In most states, including California, the State appoints its

21   electors on a "winner-takes-all" basis, based on the statewide popular vote on Election

22   Day.

23
     [2] Unless stated otherwise, this overview is derived, at times verbatim, from Federal Defendants'
24   Motion to Dismiss and California Defendants' Motion to Dismiss.  (ECF Nos. 71 and 73.)
         [3] On February 28, 2013, California Defendants requested that the Court take judicial notice of the
25   following documents: (1) Executive Department, State of California, *Certificate of Ascertainment for
     Electors of President and Vice President of the United States of America 2012*; (2) Executive Department,
26   State of California, *Certificate of Vote for President and Vice President of the United States of America
     2012*; (3) 159 Congressional Record H49-H50; (4) Secretary Bowen's *Statement of Vote, November 6,
27   2012, General Election*; (5) and  United States Election Assistance Commission; *National Mail Voter
     Registration Form*.  (ECF No. 75.)  The Court granted California Defendants' RJN at the April 22, 2013
28   hearing because the content of the documents attached to the RJN "can be accurately and readily
     determined from sources whose accuracy cannot reasonably be questioned."  See Fed. R. Civ. P. 201.

That is all electors pledged to the presidential candidate who wins the most votes become electors for that State.  Two hundred and seventy electoral votes are necessary to win the American presidency.

As soon as the election results are final, the Governor of each State is required to prepare and send to the Archivist of the United States a Certificate of Ascertainment ("COA"), which is a formal list of the names of electors chosen in that State and the number of votes cast for each.  See 3 U.S.C. § 6.  Of particular relevance to this case, Governor Brown executed California's COA on December 15, 2012.  (RJN Ex. A.)

The electors chosen on Election Day meet in their respective state capitals on the Monday after the second Wednesday in December to cast their votes for President and Vice President of the Unites States.  See U.S. Const. amend. XII; 3 U.S.C. §§ 7, 8.  In the instant case, the Electoral College executed California's Certificates of Vote ("COV"), and Secretary Bowen witnessed them, on December 17, 2012.  (RJN Ex. B.)  On December 18, 2012, California forwarded both its COA and COV to Vice President Biden.  (Decl. John Kim in Support of Cal. Defs' Mot. to Dismiss, ECF No. 59 ¶ 1.)

On January 4, 2013, the Senate and House of Representatives met in the House Chamber and counted the electoral votes.  See 3 U.S.C § 15 (2012); H.J. Res. 122, 112th Cong. (2012).  Vice President Biden, in his role as President of the Senate, was the presiding officer.  Vice President Biden opened and presented the certificates of the electoral votes of the states and the District of Columbia in alphabetical order.  See 3 U.S.C § 15 (2012).

Under 3 U.S.C. § 15, when the certificate from each state is read, "the President of the Senate shall call for objections, if any."  An objection must be made in writing and must be signed by at least one Senator and one Representative.  Id.  The objection "shall state clearly and concisely, and without argument, the ground thereof."  Id.  If and when an objection is made, each house is to meet and debate it separately.  Id.  Both Houses must vote separately to agree to the objection to an electoral vote; otherwise, the electoral vote is counted.  Id.

No Senators or Congressmen objected at the January 4, 2013, electoral vote count, and the tally confirmed that President Obama was the winner of the 2012 Presidential election with 332 electoral votes to Governor Romney's 206 votes.  (RJN Ex. C.)  Chief Justice Roberts inaugurated President Obama at noon on January 20, 2013.  See U.S. Const. amend. XX, § 1.

## STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1) Standard

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The burden of establishing the contrary rests upon the party asserting jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630 (2002).  Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).  Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party."  Id.; see also Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack and a factual attack.  Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

///

///

Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. Id.

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." Thornill, 594 F.2d at 733 (internal citation omitted). The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733. If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id. However, in the case of a facial attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

7

B.    **Federal Rule of Civil Procedure 12(b)(6) Standard**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2). . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

///

If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## ANALYSIS

Federal Defendants argue the Court should dismiss Plaintiffs' FAC under Federal Rule of Civil Procedure 12(b)(1) for the following reasons: (1) the case is moot; (2) Plaintiffs lack standing to bring their claims; (3) Plaintiffs' claims are barred by the political question doctrine; and (4) sovereign immunity protects Congress from this suit. (ECF No. 71.)  California Defendants also argue that Plaintiffs' FAC should be dismissed under Rule 12(b)(1) because the case is moot as to California and it presents a non-justiciable political question.  (ECF No. 73.)  Finally, both Federal Defendants and California Defendants argue that the Court should dismiss Plaintiffs' action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.     Political Question Doctrine[4]

All Defendants argue that the Court should dismiss this action for lack of subject matter jurisdiction because Plaintiffs' claims are barred by the political question doctrine. (ECF Nos. 71, 73)

The political question doctrine arises out of the Constitution's division of powers, and provides that certain questions are political as opposed to legal, and therefore off limits to the court.

---

[4] This section's analysis is substantially similar to the discussion set forth in the Court's January 16, 2013, Order denying Plaintiff's TRO application.  (ECF No. 52.)

1  See Corrie v. Caterpillar, Inc., 503 F.3d 974, 980 (9th Cir. 2007) ("The Supreme Court

2  has indicated that disputes involving political questions lie outside of the Article III

3  jurisdiction of federal courts.").  The doctrine exists because the Constitution prohibits "a

4  court from interfering in a political matter that is principally within the dominion of another

5  branch of government."  Banner v. U.S., 303 F. Supp. 2d 1, 9 (D.D.C. 2004) (citing

6  Spence v. Clinton, 942 F. Supp. 32, 39 (D.D.C. 1996)).  The doctrine of separation of

7  powers requires that political issues be resolved by the political branches rather than by

8  the judiciary.  See Corrie, 503 F.3d at 980.  In other words, "[t]he political question

9  doctrine serves to prevent the federal courts from intruding unduly on certain policy

10  choices and value judgments that are constitutionally committed to Congress or the

11  executive branch."  Koohi v. U.S., 976 F.2d 1328, 1331 (9th Cir. 1992).

12  　　　To determine whether an issue is a "political question" that the court is barred

13  from hearing, the court considers whether the matter has "in any measure been

14  committed by the Constitution to another branch of government."  Baker v. Carr,

15  369 U.S. 186, 210 (1962).  The Supreme Court has set forth six factors indicating the

16  existence of a political question.[5]  Id. at 217.  The first factor—whether there is "a

17  textually demonstrable constitutional commitment of the issue to a coordinate political

18  department"—is the one most relevant to the present case.  Id.

19  　　　The "natural born citizen" clause of the U.S Constitution, on which Plaintiffs

20  primarily rely, "is couched in absolute terms of qualification and does not designate

21  which branch should evaluate whether the qualifications are fulfilled."  Barnett v. Obama,

22  No. SACV 09-0082 DOC (ANx), 2009 WL 3861788, at *12 (C.D. Cal. Oct. 29, 2009).

23  　　　　　[5] "In Baker v. Carr, the Supreme Court announced a series of facts, at least one of which must be
24  present in order to make a non-justiciable political question.  Each factor relates to the separation of
    powers and are: (1) "a textually demonstrable constitutional commitment of the issue to a coordinate
25  political department" (i.e., to Congress or the President); (2) "a lack of judicially discoverable and
    manageable standards for resolving the issue"; (3) "the impossibility of deciding the issue without an initial
26  policy determination of a kind clearly for nonjudicial discretion"; (4) "the impossibility of a court's
    undertaking independent resolution without expressing lack of the respect due coordinate branches of
27  government"; (5) "an unusual need for unquestioning adherence to a political decision already made"; or
    (6) "the potential for embarrassment from multifarious pronouncements by various departments on one
28  question."  Do-Nguyen v. Clinton, 100 F. Supp. 2d 1241 (S.D. Cal. 2000) (quoting Baker, 369 U.S. 186 at
    217).

Accordingly, the Court must look to the text of the Constitution to determine whether the Constitution "speaks to which branch of government has the power to evaluate the qualifications of a president." Id.  As the Court explained in its January 16, 2013, Order, numerous articles and amendments of the U.S. Constitution, when viewed together, make clear that the issue of the President's qualifications and his removal from office are textually committed to the legislative branch and not the judicial branch.

First, Article II, Section 1 of the Constitution establishes the Electoral College as the means of electing the President, but the Constitution also empowers "Congress [to] determine the time of choosing the electors, and the day on which they shall give their votes . . . ." U.S. Const. art. II, § 1.  The Twelfth Amendment empowers the President of the Senate to preside over a meeting between the House of Representatives and the Senate, in which the President of the Senate counts the electoral votes.[6]  U.S. Const. amend. XII.  If no candidate receives a majority of presidential votes, the Twelfth Amendment authorizes the House of Representatives to choose a President between the top three candidates.  Id.  The Twentieth Amendment empowers Congress to create a procedure in the event that neither the President-elect nor Vice President-elect qualifies to serve as President of the Unites States.  U.S. Const. amend. XX, § 4.

Additionally, the Twenty-Fifth Amendment provides for removal of the President should he be unfit to serve.  U.S. Const. amend. XXV.  Finally, and perhaps most importantly, the Constitution gives Congress, and Congress alone, the power to remove the President from office.  U.S. Const. art. I, § 2, cl. 5; U.S. Const. art. I, § 3, cl. 6; U.S. Const. art. I, § 3, cl. 7.  Nowhere does the Constitution empower the Judiciary to remove the President from office or enjoin the President-elect from taking office.

These various articles and amendments of the Constitution make clear that the Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States.

///

---

[6] The President of the Senate is the Vice President of the United States.

1 | As such, the question presented by Plaintiffs in this case—whether President Obama

2 | may legitimately run for office and serve as President—is a political question that the

3 | Court may not answer.  Accordingly, this Court, like numerous other district courts that

4 | have dealt with this issue to date, declines to reach the merits of Plaintiffs' allegations

5 | because doing so would ignore the Constitutional limits imposed on the federal courts.

6 | See Do-Nguyen v. Clinton, 100 F. Supp. 2d 1241, 1247 (S.D. Cal. 2000) (dismissing

7 | plaintiff's action seeking President Clinton's resignation as a non-justiciable political

8 | question because removal of the President from office is an issue that has a "textually

9 | demonstrable constitutional commitment to Congress").

10 |     In sum, were the Court to grant the declaratory relief requested by Plaintiffs, it

11 | would necessarily "[interfere] in a political matter that is principally within the dominion of

12 | another branch of government."  See Banner, 303 F. Supp. 2d at 9.  Because federal

13 | courts are barred from intruding on a task constitutionally assigned to Congress, this

14 | action presents a non-justiciable political question that this Court cannot consider, and,

15 | thus, the court lacks jurisdiction over this case.  Accordingly, this action must be

16 | dismissed with prejudice.[7]

17 |

18 |     **B.    Additional Grounds for Dismissal**

19 |

20 |     Although the political question doctrine bars Plaintiffs' declaratory relief action to

21 | the extent it challenges President Obama's eligibility to serve as President of the United

22 | States, the Court cannot avoid noting several other glaring jurisdictional problems

23 | associated with Plaintiffs' claim.

24 | ///

25 | _____

26 |     [7] At the hearing, Plaintiffs relied heavily on a recently decided Eastern District of California case, Peace and Freedom Party v. Bowen to support their argument.  No. 12-00853, 2012 WL 6161031 *1 (E.D.

27 | Cal. Dec. 11, 2012).  Although Plaintiffs discussed the case at the MTD hearing, Plaintiffs failed to include it in any of their filings.  Neither California Defendants nor Federal Defendants could discuss the case as they learned about it on-the-spot at the hearing.  Moreover, even though Peace and Freedom Party has no

28 | precedential weight on this Court, the Court finds it distinguishable from the present action.

1          **1.     Standing**

2

3          Article III of the United States Constitution limits the judicial power of federal

4    courts to "adjudicating actual 'cases' and 'controversies.'"  Allen v. Wright, 468 U.S. 737,

5    750 (1984).  "As an incident to the elaboration of this bedrock requirement, [the Supreme

6    Court] has always required that a litigant have 'standing' to challenge the action sought

7    to be adjudicated in the lawsuit."  Valley Forge Christian Coll. v. Ams. United for

8    Separation of Church and State, Inc., 454 U.S. 464, 471 (1982).  Importantly for the

9    present case, the Supreme Court has explained that the "standing inquiry" should be

10   "especially rigorous" if reaching the merits of the lawsuit "would force [the court] to

11   decide whether an action taken by one of the other two branches of the Federal

12   Government was unconstitutional."  Raines v. Byrd, 521 U.S. 811, 819-20 (1997).

13         A plaintiff bears the burden of demonstrating that he or she has standing.

14   Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).  To establish standing, a

15   plaintiff must show that:

16              (1) [he] has suffered an "injury in fact" that is (a) concrete and
               particularized and (b) actual or imminent, not conjectural or
17              hypothetical; (2) the injury is fairly traceable to the challenged action
               of the defendant; and (3) it is likely, as opposed to merely
18              speculative, that the injury will be redressed by a favorable decision.

19   Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180–81 (2000).  The

20   requirement that the injury be "particularized" means that it "must affect the plaintiff in a

21   personal and individual way."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1

22   (1992).  Accordingly, to demonstrate standing, a plaintiff must allege "such a personal

23   stake in the outcome of the controversy as to warrant his invocation of federal-court

24   jurisdiction and to exercise the court's remedial powers on his behalf."  Warth v. Seldin,

25   422 U.S. 490, 498–99 (1975) (emphasis added).

26         The Supreme Court has emphasized that "[s]tanding to sue may not be

27   predicated upon an interest of the kind . . . which is held in common by all members of

28   the public, because of the necessarily abstract nature of the injury all citizens share."

13

Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 220 (1974); see also Warth, 422 U.S. at 499 ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."); Lujan, 504 U.S. at 573-74 ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and intangibly benefits him than it does the public at large—does not state an Article III case or controversy."). For this reason, the Supreme Court has consistently refused to recognize generalized claims of constitutional ineligibility for public office as sufficient to confer standing. See, e.g., Ex Parte Levitt, 302 U.S. 633, 633 (1937) (per curiam) (holding that "a citizen and a member of the Bar of this Court" did not have standing to challenge appointment of Hugo Black to the Supreme Court under the Constitution's Ineligibility Clause, art. I, § 6, cl. 2, because he "ha[d] merely a general interest common to all members of the public"); Schlesinger, 418 U.S. at 220-23 (holding that an anti-war group did not have standing to invoke the Incompatibility Clause, art. I, § 6, cl. 2, to have members of Congress stricken from the Armed Forces Reserve List).

Several Circuits, including the Ninth Circuit, have recognized a "competitive standing" theory. See, e.g., Owen v. Mulligan, 640 F. 2d 1130, 1132-33 (9th Cir. 1981); Tex. Dem. Party v. Benkiser, 459 F.3d 582, 586-87 (5th Cir. 2006); Schulz v. Williams, 44 F.3d 48, 53 (2d Cir.1994); Fulani v. Hogsett, 917 F.2d 1028, 1030 (7th Cir.1990). The Ninth Circuit has explained that "a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." Drake v. Obama, 664 F.3d 774, 782 (9th Cir. 2011) (quoting Hollander, 566 F. Supp. 2d 63, 68 (D.N.H. 2008)). For the competitive standing theory to apply, however, a competitor must have a "chance of prevailing in the election." Drake, 664 F.3d at 782. A chance is "the possibility of a particular outcome in an uncertain situation."

14

(Merriam-Webster's Dictionary, m-w.com.)  Other courts have emphasized that a political

candidate must be a "competitor" or "rival" to demonstrate the particularized injury

element of competitive standing.  Recently, the Western District of Tennessee concluded

that competitive standing to challenge the results of the 2012 Presidential elections did

not extend to "candidates" who would not appear on the state's general presidential

election ballot:

> At most, the pleadings state that Plaintiffs were registered candidates for President of the United States.  Neither Plaintiff has alleged that he is a Tennessee political party's nominee for the office, that his name will appear on the ballot for Tennessee's general election in November, that he is campaigning in the state of Tennessee, that any registered voter in Tennessee intends to cast a vote for him, or that President Obama's presence on the ballot will in any way injure either candidate's campaign.  In short, <u>Plaintiffs have not alleged that he is truly in competition with President Obama for votes</u> in Tennessee's general election."

Liberty Legal Found. v. Nat'l Dem. Party of the USA, Inc., 875 F. Supp. 2d 791, 800-01

(W.D. Tenn. 2012) (emphasis added).

Similarly, the United States Court of Appeals for the District of Columbia recently

held that "self-declaration as a write-in candidate is insufficient" to establish standing

because "if it were sufficient any citizen could obtain standing (in violation of Article III of

the U.S. Constitution) by merely self-declaring."  Sibley v. Obama, No. 12-5198, 2012

WL 6603088 at *1 (D.C. Cir. Dec. 6, 2012), cert. denied, 133 S. Ct. 1263 (2013).

Further, the doctrine of competitive standing does not stretch so far as to include

individuals hoping to become electors pledged to vote for a presidential candidate.

Robinson v. Bowen, 567 F. Supp. 2d 1144, 1146 (N.D. Cal. 2008).  A would-be elector's

injury is "not only speculative, but merely derivative of the prospects of his favored

candidate."  Id.; Gottlieb v. Fed. Election Comm'n, 143 F. 3dd 618, 622 (D.C. Cir. 1998).

Federal Defendants correctly point out that the doctrine of competitive standing

does not apply to Plaintiffs Noonan and MacLearan because neither Noonan's nor

MacLearan's chances of prevailing in the 2012 Presidential election were affected by

President Obama's participation.  (ECF No. 71-1.)

1        As alleged, Noonan and MacLearan were presidential candidates in 2012, and

2   Noonan won the American Independent Primary.  (ECF No. 69.)  However, as

3   demonstrated by judicially noticed documents, an individual by the name of Thomas

4   Hofeling was actually nominated as the American Independent party's candidate for

5   President, not Noonan.  (RJN, Ex. A).  As to MacLearan, the FAC is devoid of any

6   details about his alleged candidacy for President.

7        To gain competitive standing, Noonan and MacLearan needed to prove that their

8   "own chances of prevailing in an election" were affected by President Obama's presence

9   on the ballot.  See Drake, 664 F.3d 774 at 784. However, they have failed to

10  demonstrate that they were President Obama's competitors in the 2012 Presidential

11  election or were otherwise personally injured by President Obama's participation in the

12  election.  There is no evidence that Noonan or MacLearan appeared on any state's 2012

13  general presidential election ballot, that they campaigned for the presidency anywhere in

14  the country, or that a single registered voter intended to vote for them.  Concluding that

15  either Noonan or MacLearan has standing to bring this lawsuit would amount to declaring

16  that any citizen who wished to be the President of the United States could self-declare

17  himself or herself a presidential candidate and gain standing in federal court to challenge

18  the results of the presidential election.  Such a conclusion would clearly run afoul of

19  Article III's "case or controversy" requirement.  See Sibley, 2012 WL 6603088 at *1.

20       Further, Plaintiffs argue that Plaintiffs Grinols and Odden have competitive

21  standing as would-be presidential electors.  As alleged, Plaintiff Grinols was slated to be

22  a Republican Party elector if a Republican candidate won California's popular vote, and

23  Plaintiff Odden was expected to be a Libertarian party elector if the Libertarian Party's

24  candidate won the election.  (ECF No.69.)  However, the alleged harm Grinols and

25  Odden faced as disappointed potential presidential electors is too far attenuated and

26  vague to meet the particularized injury requirement imposed by the Supreme Court.

27  Grinols and Odden's alleged harm is, at best, "speculative" and "derivative of their

28  favored candidates."

See Robinson, 567 F. Supp. 2d at 1146.  Plaintiff Taitz's status as a "voter" also does not provide her with standing to challenge the results of the 2012 Presidential election. Courts across the country have continually rejected arguments that "voters" have standing, explaining that "a voter . . . has no greater stake in the lawsuit than any other United States citizen," and that "the harm [the voter] alleges is therefore too generalized to confer standing."  Drake, 664 F. 3d at 784.

Because Noonan, MacLearan, Grinols, Odden, and Taitz are unable to demonstrate a "concrete and particularized . . . injury . . . traceable to the [defendants]," they are unable to show that they have standing to challenge the results of the 2012 Presidential election.  See Friends of the Earth, Inc., 528 U.S. at 180–81.  Accordingly, the Court must dismiss those Plaintiffs from this action as lacking standing.

Finally, Plaintiffs contend that Keith Judd, a federal inmate currently serving his prison sentence, who received over 40,000 votes in West Virginia's 2012 Democratic Party Primary, has competitive standing to proceed with this action because he was President Obama's "competitor" in last year's Presidential election.

Cognizant of the fact that the history presents several examples of inmates running for the presidency from their jail cells, the Court declines to issue a categorical ruling that Plaintiff Judd has no standing to proceed with this action, even though the Court is quite skeptical of Judd's ability to demonstrate that President Obama's participation in the 2012 election hurt Judd's "chances of prevailing in the election."[8]  See Drake, 664 F.3d at 782.

///

///

///

_____

[8] Lyndon H. LaRouche, Jr. ran for the U.S. Presidency in 1992 while serving a federal sentence he received in 1988 for  several counts of mail fraud.  See LaRouche v. Fed. Election Comm'n, 996 F.2d 1263, 1264 (D.C. Cir. 1993) cert. denied 114 S. Ct. 550 (1993).  Similarly, Eugene Debs ran as the Socialist Party's candidate for the presidency in 1900, 1904, 1908, 1912 and 1920.  In 1920, Debs ran for president while serving time in federal prison for sedition.
(http://www.britannica.com/EBchecked/topic/154766/Eugene-V-Debs)

1   As analyzed above, even if the doctrine of competitive standing allows Plaintiff

2   Judd to bring the instant lawsuit, his challenge to President Obama's eligibility must be

3   dismissed because it is barred by the political question doctrine.[9]

4

5   **2.    Mootness**

6

7   Mootness is "the doctrine of standing set in a time frame: The requisite personal

8   interest that must exist at the commencement of the litigation (standing) must continue

9   throughout its existence (mootness)." U.S. Parole Comm'n v. Geraghty, 445 U.S. 388,

10  397 (1980) (citation omitted).  "The mootness doctrine 'requires that an actual, ongoing

11  controversy exist at all stages of federal court proceedings.'" Leigh v. Salazar, 677 F.3d

12  892, 896 (9th Cir. 2012).  A case becomes moot when it has "lost its character as a

13  present, live controversy . . ." Oregon v. FERC, 636 F.3d 1203, 1206 (9th Cir. 2011).

14  As relevant for the purpose of instant litigation, the test for mootness of a claim for

15  declaratory relief is "whether the facts alleged, under all the circumstances, show that

16  there is a substantial controversy, between parties having adverse legal interests, of

17  sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

18  Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1174–75 (9th Cir. 2002) (quoting

19  Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974)).  Accordingly, the court

20  must inquire "whether a judgment will clarify and settle the legal relations at issue and

21  whether it will afford relief from the uncertainty and controversy giving rise to the

22  proceedings." Natural Res. Defense Council, Inc. v. U.S. EPA, 966 F.2d 1292, 1299 (9th

23  Cir. 1992).  In order to obtain declaratory relief, a plaintiff must show "a very significant

24  possibility of future harm; it is insufficient . . . to demonstrate only past injury." San Diego

25  Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996).

26   [9] The Bureau of Prison's ("BOP") does not have a specific regulation which prevents inmates from
running for political office; however, Prohibited Act 334 "Conducting a business; conducting or directing an
27  investment transaction without staff authorization" in the Inmate Admission and Orientation Handbook
likely prohibits a federal inmate from running for a compensated elected office.

28

1   Thus, in order to satisfy the Article III "case or controversy" requirement, the dispute

2   must be not only "definite and concrete" and "real and substantial," but also resolvable

3   by "specific relief through a decree of a conclusive character, as distinguished from an

4   opinion advising what the law would be upon a hypothetical state of facts." MedImmune,

5   Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citation omitted) (emphasis added).

6        In this case, as fully explained above, Plaintiffs initially sought a preliminary

7   injunction to prevent President Obama's inauguration and to enjoin a series of other

8   events leading to President Obama's inauguration.

9        However, since Plaintiffs filed their original complaint in December of 2012, all of

10  the events that Plaintiffs sought to enjoin have already taken place.  In particular, as

11  Defendants correctly point out: (1) Governor Brown already prepared and delivered the

12  COA; (2) the Electoral College already convened and cast their votes for President; (3)

13  the Electoral College already delivered their sealed votes to the President of the Senate;

14  (4) Congress already counted the electoral votes at a joint session of Congress on

15  January 4, 2013; (5) Congress already declared President Obama the winner earning

16  332 electoral votes to Governor Romney's 206 electoral votes; and (6) President Obama

17  was inaugurated and began his second term as President of the United States on

18  January 20, 2013.  (ECF Nos. 71,73.)

19       Realizing that every action they had sought to enjoin already occurred, Plaintiffs

20  filed the operative amended complaint, in which they no longer seek a preliminary

21  injunction, but merely request this Court's judicial declaration that President Obama is

22  ineligible to be the President of the United States.  However, Article III prohibits this

23  Court to grant declaratory relief where "changes in the circumstances that prevailed at

24  the beginning of litigation have forestalled any occasion for meaningful relief." West v.

25  Sec'y of the Dep't of Transp., 206 F.3d 920, 925 n. 4 (9th Cir. 2000) (emphasis added).

26  During the hearing, Plaintiffs agreed that the Court cannot issue a ruling removing

27  President Obama from office−the very remedy that Plaintiffs sought by filing the instant

28  action and seeking an injunction preventing President Obama's inauguration.

1  Thus, even were the Court to issue the declaratory judgment requested by Plaintiffs, that

2  ruling would have no effect on the parties' legal relationship and would amount to

3  nothing more than an advisory opinion, which the Court is constitutionally prohibited from

4  issuing. F.C.C. v. Pacifica Foundation, 438 U.S. 726, 735 (1978).

5       Accordingly, granting such declaratory judgment "without the possibility of

6  prospective effect would be superfluous," would serve no useful purpose, and would not

7  provide any legally cognizable benefit to Plaintiffs.  See McQuillion v. Schwarzenegger,

8  369 F.3d 1091, 1095 (9th Cir. 2004).  Because this Court "has no jurisdiction to hear a

9  case that cannot affect the litigants' rights," see Allard v. DeLorean, 884 F.2d 464, 466

10 (9th Cir.1989), Plaintiffs' challenge to President Obama's eligibility for office no longer

11 presents a live "case or controversy" and is therefore dismissed as moot.

12      Plaintiffs, however, argue that the case is not moot because it is subject to the

13 "capable of repetition yet evading review" exception to the mootness doctrine.  (ECF

14 No. 69 at 18-20.)  This exception applies only in "exceptional situations," City of

15 Los Angeles v. Lyons, 461 U.S. 95, 109 (1983), "where the following two circumstances

16 [are] simultaneously present: (1) the challenged action [is] in its duration too short to be

17 fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation

18 that the same complaining party [will] be subject to the same action again," Lewis v.

19 Cont. Bank Corp., 494 U.S. 472, 481 (1990) (internal citation and quotation marks

20 omitted).

21      The "capable of repetition, yet evading review" exception is inapplicable in this

22 case because the actions challenged by Plaintiffs cannot be repeated.  The Twenty-

23 Second Amendment prohibits a person from being elected to the office of President

24 more than twice.  U.S. Const. amend. XXII, § 1.  Since President Obama is currently

25 serving his second term as President of the United States, he is constitutionally

26 precluded from serving as President again.  Accordingly, even were the Court to declare

27 that President Obama is ineligible to serve as the American President, such a

28 declaration will have no practical effect on the parties' future relationship.

See Newdow v. Roberts, 603 F.3d 1002, 1009 (D.C. Cir. 2010) (explaining that the exception applies only where "an otherwise moot case [has] a reasonable chance of affecting the parties' future relations").  Therefore, the "capable of repetition, yet evading review" exception does not apply.

In sum, by granting Plaintiffs' requested declaratory relief would serve no useful purpose.  All parties agree that the Court cannot enjoin the events that have already happened and that the Court is constitutionally barred from removing President Obama from office.  Under these circumstances, Plaintiffs' request for declaratory relief is dismissed as moot and is dismissed for lack of subject matter jurisdiction.

### 3.    The Speech or Debate Clause

Federal Defendants argue that the Court should dismiss Plaintiffs' action because Plaintiffs' claim against Congress is barred by the Speech or Debate Clause of the United States Constitution.  (ECF No. 71.)  At the hearing, Plaintiffs argued that the Speech or Debate Clause had "nothing to do with this case . . . it only applies to cases where the government can prosecute or arrest members of Congress and prosecute them because of something they said."

Contrary to Plaintiffs' statement during oral argument, the Speech or Debate Clause provides:

> The Senators and Representatives shall . . . in all Cases except Treason, Felony, and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and <u>for any Speech or Debate in either House, they shall not be questioned in any other Place</u>.

U.S. Const. Art. I, § 6, cl. 1 (emphasis added).  The Speech or Debate Clause "affords Member[s] of Congress [a] vital privilege - they may not be questioned in any other place for any speech or debate in either House."  Gravel v. U.S., 408 U.S. 606, 615 (1972).

///

1    The Speech or Debate Clause reinforces the Constitution's commitment to the

2    separation of powers by assuring that Congress, a co-equal branch of government, "has

3    the freedom of speech and deliberation" to perform its legislative function without

4    intimidation, intervention, or oversight from the executive or judicial branches.  Gravel,

5    408 U.S. at 616- 18.  "Without exception, [Supreme Court] cases have read the Speech

6    or Debate Clause broadly to effectuate its purposes."  Eastland v. U.S. Servicemen's

7    Fund, 421 U.S. 491, 501 (1975) (holding that the activities of the Senate Subcommittee,

8    the individual Senators, and the Chief Counsel are protected by the absolute prohibition

9    of the Speech or Debate Clause of the Constitution being "questioned in any other

10   Place" and are immune from judicial interference) ; Kilbourn v. Thompson, 103 U.S. 168,

11   204 (1881) (holding that an individual held in custody until he agreed to testify before

12   committee could not sue Members of Congress for false imprisonment as they were

13   exercising their official duties and protected by the Speech or Debate Clause).  To

14   determine whether the Speech or Debate Clause applies, a Court must ask "whether the

15   claims presented fall within the sphere of legitimate legislative activity."  Gravel, 408 U.S.

16   606 at 625.  "Matters which the Constitution places within the jurisdiction of either

17   House" fall within the sphere of legitimate legislative activity and those activities shall not

18   be questioned in any other place because the prohibitions of the Speech or Debate

19   Clause are absolute.  Id.; Eastland, 421 U.S. at 501.

20       Accordingly, to determine whether the Speech and Debate Clause applies to

21   Plaintiffs' lawsuit against Congress, the Court must assess "whether the claims

22   presented fall within the sphere of legislative activity."  Gravel, 408 U.S.606 at 625.

23   Various articles and amendments of the U.S. Constitution place determining a person's

24   qualifications to serve as President of the United States and counting electoral votes

25   within Congress's jurisdiction.  See supra.  Because the Constitution assigns those tasks

26   to Congress, the Speech or Debate Clause applies in this case, and the Court must not

27   question Congress' performance of its duties.  Thus, Plaintiffs' action against Congress

28   is barred by the Speech or Debate Clause, and is therefore dismissed.

1

2

### C.    Plaintiffs' Claims under California Law

Plaintiffs' FAC contains a claim for violations of California Penal Code § 2150 against California Defendants.  (ECF No. 69 at 15-18.)  Although framed as a constitutional claim for violation of Plaintiffs' "equal protection" rights, this cause of action is based entirely on state law and, to the extent the Court can discern from Plaintiffs' convoluted allegations, does not "arise under" federal law as required by 28 U.S.C. § 1331 for the Court to have original jurisdiction.[10]  In their opposition to Defendants' motions to dismiss, Plaintiffs concede that their "equal protection" claim is a camouflaged state-law claim as they assert that the Court can exercise "supplemental and ancillary jurisdiction" over their second claim for relief.  (ECF No. 115 at 5.)

Having dismissed Plaintiffs' only federal claim for declaratory relief, the Court determines that the FAC presents no basis for federal question or diversity jurisdiction. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claim for violations of California Penal Code pursuant to 28 U.S.C. § 1367(c)[11] and dismisses this claim without prejudice.[12]

_____

[10] A case 'arises under' federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088–89 (9th Cir. 2002) (citation omitted).  The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," pursuant to which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."   Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

[11] If Plaintiffs are concerned about California voting procedures, they should bring their grievances to a state court.  Cal. Elec. Code §§ 16100(d), (b).  Section 16100(d) provides that "any elector of a county, city, or of any political subdivision of either may contest any election held therein, for any of the following causes…including… [t]hat the person who has been declared elected to an office was not, at the time of the election, eligible to that office."  Section 16100(b) enables any elector to contest an election because illegal votes were cast.  Neither Plaintiffs nor any other California elector lodged a Complaint in state court alleging that President Obama was ineligible for office or that illegal votes were cast in 2012. (ECF No. 75.)

[12] To the extent Plaintiffs attempted to state a federal "equal protection" claim, the Court determines that Plaintiffs' FAC does not meet the federal pleading requirements under Rule 8(a)(2) because it does not contain "a short and plain statement" of the claim showing that the pleader is entitled to relief.  Since Plaintiffs' pleading does not provide Defendants with the requisite "fair notice of what the . . . claim is and the grounds upon which it rests," see Twombly, 550 U.S. at 555, it is subject to dismissal for failure to state a claim under Rule 12(b)(6).  Because the Court concludes that any amendment would be futile, the dismissal is without leave to amend.

23

**CONCLUSION**

Courts across the country have uniformly rejected claims that President Obama is ineligible to serve as President because his Hawaiian birth certificate is a fake or is forged.  See, e.g., Kerchner v. Obama, 612 F.3d 204 (3d Cir.), cert. denied, 131 S. Ct. 663 (2010); Hollister v. Soetoro, 601 F. Supp. 2d 179, 180 (D.D.C. 2009), aff'd, 368 F. App'x 154 (D.C. Cir. 2010); Berg v. Obama, 574 F. Supp. 2d 509 (E.D. Pa. 2008), aff'd, 586 F.3d 234 (3d Cir. 2009); Wrotnowski v. Bysiewicz, 958 A.2d 709 (Conn.), stay denied, 129 S. Ct. 775 (2008); Ankeny v. Governor of State of Indiana, 916 N.E.2d 678 (Ind. Ct. App. 2009).  Plaintiff Taitz has single-handedly filed at least seven similar challenges to President Obama's eligibility for office, each and every one of these suits has failed.  See Taitz v. Astrue, 806 F. Supp. 2d 214 (D.D.C. 2011) (denying plaintiffs' motion for reconsideration), aff'd, 2012 WL 1930959 (D.C. Cir. May 25, 2012); Taitz v. Ruemmler, No. 11-1421 (RCL), 2011 WL 4916936 (D.D.C. Oct.17, 2011) (granting defendant's motion to dismiss and dismissing plaintiff's suit with prejudice), aff'd, No. 11-5306, 2012 WL 1922284 (D.C. Cir. May 25, 2012); Taitz v. Obama, 707 F. Supp. 2d 1 (D.D.C. 2010) (granting government's motion to dismiss, denying plaintiff's motion for preliminary injunction as moot, and dismissing case), recons. denied, 754 F. Supp. 2d 57 (D.D.C. 2010); Cook v. Good, No. 4:09-cv-82 (CDL), 2009 WL 2163535 (M.D. Ga. July 16, 2009) (dismissing case for lack of subject matter jurisdiction); Rhodes v. MacDonald, No. 4:09-CV-106 (CDL), 2009 WL 2997605 (M.D. Ga. Sept. 16, 2009) (denying plaintiff's motion for temporary restraining order and dismissing plaintiff's complaint in its entirety), cert. denied, 131 S. Ct. 918 (2011; Barnett, 2009 WL 3861788 (granting defendants' motion to dismiss), aff'd sub nom. Drake v. Obama, 664 F.3d 774 (9th Cir. 2011), and order clarified, No. SA CV 09-0082 DOC (ANx), 2009 WL 8557250 (C.D. Cal. Dec. 16, 2009); Keyes v. Bowen, 189 Cal. App. 4th 647, 661 (Cal. Ct. App. 2010), cert. denied, 132 S. Ct. 99 (2011) (upholding on appeal a state Superior Court's ruling sustaining demurrers without leave to amend).

1    Despite failing in courts across the country, Plaintiffs have continued to file

2  lawsuits alleging that President Obama is ineligible to serve as the American President

3  because he is not a natural born U.S. citizen.  However, as set forth above, federal

4  courts cannot grant Plaintiffs the relief sought because the issues which Plaintiffs raise in

5  their pleadings are constitutionally committed to the jurisdiction of another branch of the

6  federal government.  If Plaintiffs believe that President Obama has violated the law, their

7  remedy is to alert Congress to the alleged wrongdoing.  Congress could then initiate

8  impeachment proceedings with the aid of an independent and special prosecutor.  See

9  U.S. Const. art. I, § 2, cl. 5; U.S. Const. art. I, § 3, cl. 6; U.S. Const. art. I, § 3, cl. 7.

10  Plaintiffs could also lobby Congress or the states to pass a Constitutional amendment

11  defining the phrase "natural born citizen" as used in Article II of the Constitution or pass

12  laws requiring presidential candidates to prove their citizenship before taking office.  U.S.

13  Const. art. V.

14    In sum, as fully analyzed above, Plaintiffs' declaratory relief action is barred by the

15  political question doctrine, is moot, and Plaintiffs lack standing to bring this action.

16  Additionally, the Speech or Debate Clause of the U.S. Constitution bars Plaintiffs' lawsuit

17  against Congress.  Accordingly, the Court grants the motions to dismiss filed by Federal

18  Defendants and California Defendants and dismisses Plaintiffs' first cause of action

19  without leave to amend.[13]

20    For the reasons set forth above:

21    1.    Defendants' Motions to Dismiss (ECF Nos. 71, 73) are GRANTED without

22  leave to amend.

23    2.    The Court DISMISSES without leave to amend Plaintiffs' claim for

24  declaratory relief arising out of President Obama's alleged ineligibility for office.

25  ///

26    [13] As demonstrated by the analysis above and by the rulings of numerous other courts throughout
27  the nation, Plaintiffs' challenge to President Obama's eligibility for office is frivolous, and has been a
tremendous drain on the Court's time and resources.  Although the Court does not impose any sanctions
on Plaintiffs or their counsel at this time, the Court will not hesitate to impose such sanctions if Plaintiffs or
28  their counsel continue filing unsupported and groundless lawsuits.  See Fed. R. Civ. Proc. 11(c).

3.      Having dismissed the only federal claim asserted by Plaintiffs in their FAC, the Court declines to exercise supplemental jurisdiction over the remaining state-law claim and DISMISSES that claim without prejudice.

4.      All other pending motions, including Plaintiffs' Motion to Recuse Counsel for Defendants (ECF No. 102), are DENIED as MOOT.

5.      The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED:  May 23, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT